LEWIS PIERCE, administrator,

*vs.*

CATHERINE A. STIDWORTHY and others.

Cumberland. Opinion March 4, 1887.

*Wills. Legacies. Alabama claims. Bonds.*

A claim for the loss of a vessel by capture by confederate cruiser, Sumpter, which was allowed and paid under the Act of Congress of June 5, 1882, to the administrator of the owner, was such a property right as passed under

the residuary clause of the will of the owner though he died in April, 1875. A testator who died in April, 1875, provided in his will "All the residue of my estate, real, personal and mixed, of which I shall die possessed, or which I may be entitled to at my decease, I give, devise and bequeath to my faithful wife Katherine A. Stidworthy for the term of her life, with the right and power to use and dispose of the income, rents, profits and interest of the same, and with the further right to apply to her use if needed, any part of the principal of the personal property, making her sole judge of the need of so doing; and after her death I give and devise the same, or what shall then be left unapplied and unconsumed, to my children to be divided equally between them, the children of any deceased child to take the share of their parent; if all my children and grandchildren should die in the lifetime of my said wife, then I will that the property shall go and belong to her absolutely, to dispose of at her pleasure, and if she does not dispose of it by gift or otherwise in her lifetime to descend to her lawful heirs." *Held*, that a claim allowed the administrator with the will annexed, by the court of commissioners of Alabama claims, under the Act of Congress of June 5, 1882, passed by the will to the use of the widow; and that she was entitled to the custody of the fund arising therefrom upon giving bond to the judge of probate, with sureties, for the faithful management and preservation of the fund according to the terms of the will.

ON report.

Bill in equity by the administrator, with the will annexed, of the estate of John Stidworthy against the widow and heirs of the testator, to obtain a construction of the will.

*Lewis Pierce, pro se.*

*Woodman and Thompson*, for the widow, cited: *Comegys* v. *Vasse*, 1 Peters, 210; *Erwin* v. *U. S.* 7 Otto, 392; *Phelps* v. *McDonald*, 9 Otto, 298; *Leonard* v. *Nye*, 125 Mass. 455; *Bacon* v. *Woodward*, 12 Gray, 376; *McCarty* v. *Cosgrove*, 101 Mass. 124; *Gifford* v. *Choate*, 100 Mass. 343; *Sampson* v. *Randall*, 72 Maine, 109.

*Nathan and Henry B. Cleaves*, for the heirs.

In the present case no valid claim existed against Great Britain, no claim growing out of and adhering to the property which would pass by general bequest. In speaking of the treaty with Spain the court say, in *Comegys* v. *Vasse*, 1 Peters, 212, "The object of the treaty was to invest the commissioners with full power and authority to receive, examine and decide upon the amount and validity of the asserted claims upon Spain,

for damages and injuries. Their decision within the scope of this authority, is conclusive and final. If they pronounce the claim valid or invalid, if they ascertain the amount, their award in the premises is not re-examinable. The parties must abide by it as a decree of a competent tribunal of exclusive jurisdiction. A rejected claim cannot be brought again under review in any judicial tribunal."

The claim of John Stidworthy against Great Britain was passed upon by the tribunal of arbitration, a competent tribunal and their decision was conclusive. The case of *Randall* v. *Cochran*, 1 Ves. 98, holds, that the right of indemnity travels with the right of property and that there can be no doubt that if the party injured dies before or after a treaty is made and compensation is subsequently made, it would be assets distributable as such in the hands of his executors. The decision however is based upon an existing recognized right to compensation under the treaty. A claim demanded by our government, and as such granted, not refused as in the case of the testator.

It has been held that money paid by the United States, according to a decision of the Court of Commissioners of Alabama Claims, under the statute of June 23, 1874, to the owner of a cargo destroyed by one of the insurgent cruisers, with respect to which it was determined by the tribunal of arbitration at Geneva, constituted by the treaty of Washington of 1871, that Great Britain had failed to fulfil her duties as a neutral government, belongs to an assignee of such owner, appointed under the bankrupt act of 1867. *Leonard, Assignee,* v. *Nye,* 125 Mass. 455.

In the case last cited the court held that the bankrupt had a claim against Great Britain, through her violation of international duty, that he was justly entitled to compensation from Great Britain, though he could not obtain his rights in the ordinary course of judicial proceedings, but only by petition to the British government or through the interposition of his own government. His own government demanded compensation for his loss as a matter of right and it was awarded under the treaty by the tribunal of arbitration. The act of congress for the

adjudication and disposition of the moneys received from Great Britain, provided for their application to the payment of claims directly resulting from the damages caused by these insurgent cruisers, and the sum awarded the bankrupt by the court was upon such a claim. It was awarded by reason of his right to compensation established by the tribunal of arbitration, and it was a right capable of passing by assignment.

"The claim of the defendants was one for which compensation was justly due to them from Great Britain; was demanded by the United States from Great Britain as a matter of right; as such was awarded to be paid and was paid by Great Britain to the United States, in accordance with the provisions of the treaty between the two nations, and with the determination of the tribunal of arbitration created by that treaty; and was paid by the United States to the defendants out of the money received from Great Britain. . . . The money so demanded and received by the United States from Great Britian, and paid by the United States to the defendants, was money collected on the claim described in the agreement." *Bachman et als.* v. *Lawson et al.* 109 U. S. 659.

In the case cited, it will be observed that the claim is identified as one of the class embraced in the award. In the case at bar, no money was received from Great Britain on account of the destruction of the schooner Arcade, no compensation was due from Great Britain, no claim existed.

If it is found that the alleged claim for the loss of the schooner Arcade was of such nature and in such condition at the decease of the testator, that it would be capable of passing under the general clause contained in this will, then the intention of the testator "is to be ascertained from the terms of the will itself, elucidated it may be, by the light of the circumstances under which it was made, the state of his property, his kindred and the like." *Dunlap et als. app.* v. *Dunlap et als.* 74 Maine, 402; *Blaisdell* v. *Hight,* 69 Maine, 306.

If it is said that this supposed claim for the loss of the Arcade was constantly on his mind, the fact that no allusion is made to the claim is only additional evidence that he did not intend that

it should pass by the terms of his will. *Webster et als. executors,* v. *Mary Ann Weirs et als.* 51 Conn. 569.

LIBBEY, J. This is a bill in equity to obtain the true construction of the will of John Stidworthy, who died in April, 1875.

By the second clause in his will he gave small legacies to each of his children. The third clause is as follows : "All the residue of my estate, real, personal and mixed, of which I shall die possessed, or which I may be entitled to at my decease, I give, devise and bequeath to my faithful wife, Katharine A. Stidworthy, for the term of her life, with the right and power to dispose of the income, rents, profits and interest of the same, and with the further right to apply to her use if needed, any part of the principal of the personal property, making her sole judge of the need of so doing ; and after her death I give and devise the same, or what may be left unapplied and unconsumed to my children to be divided equally between them, the children of any deceased child to take the share of their parent ; if all my children and grandchildren should die in the lifetime of my said wife, then I will it shall go and belong to her absolutely, to dispose of at her pleasure, and if she does not dispose of it by gift or otherwise during her lifetime, to descend to her lawful heirs."

In 1861 Stidworthy owned one half of the schooner Arcade, which was destroyed by the confederate cruiser, Sumpter, in November of that year. Under the act of congress of June 5, 1882, the complainant, as administrator with the will annexed filed his application for the damage sustained by said Stidworthy by reason of the destruction of the schooner, before the court of commissioners of Alabama claims, re-established by said act, which awarded him, in his said capacity thereon $2,255.21, with interest, amounting in all to $3,639.54, which was paid him, September first, 1884. After settling his account in probate there remained in his hands $2,595.52. Said Stidworthy left a widow and two daughters, named in his will, who are parties to this bill.

Two questions are propounded to the court.

1. " Is the widow of John Stidworthy entitled to the use of the

above mentioned balance of money paid by the United States for the loss of his share of the schooner Arcade, or does it belong to his heirs?"

2 "If the widow is entitled to the benefit and use of said balance, is she entitled to its custody?"

By the third clause in the will of Stidworthy his intention is clearly expressed that all the residue of his estate, both real and personal of which he should die possessed, or which he might be entitled to at his decease should go to his wife "for the term of her life, with right and power to dispose of the income, rents, profits and interest of the same, and with further right to apply to her use any part of the principal of the personal property, making her the sole judge of the need of so doing." Under this clause all the residue of his property and rights, or claims to property, which he had the power to dispose of, by conveyance or assignment, passed to his widow to hold as therein specified. In support of this conclusion, authorities need not be cited as the same question has just been decided by this court in *Grant, Appl.* v. *Bodwell*, 78 Maine, 460. The case is unlike *Dunlap* v. *Dunlap*, 74 Maine, 402.

This brings us to the question whether the damage sustained by Stidworthy by the destruction of the Arcade by the Sumpter, was a right or claim to personal property before it was recognized by the United States by the act of 1882, which was the subject of assignment by him. It was a claim for damage to property by a wrong doer and partook of the nature of the thing destroyed. The claim existed in equity and justice against some one as soon as the damage was sustained. True the testator had no legal claim which he could enforce against any one, because the claim had not been recognized by the government, but admitting responsibility for it and providing for its payment did not create it. It was a property right existing before. It was not a claim created by congress, but its existence was admitted by it. It was a claim which would pass to the assignee in bankruptcy before it was recognized by congress. It has long been so settled by the Supreme Court of the United States, *Comegys* v. *Vasse*, 1 Pet. 193; *Erwin* v. *United States*, 97

U. S. 392.  It is so held in Massachusetts; *Leonard* v. *Nye*, 125 Mass. 455; and so decided in this state in *Grant* v. *Bodwell, supra.*

The question is so thoroughly and ably discussed by Mr. Justice STORY in *Comegys* v. *Vasse*; and by GRAY, C. J., in *Leonard* v. *Nye*, that an extended discussion of it here seems unnecessary.

If the claim existed and was assignable before it was recognized and provided for by congress, it would certainly pass by devise as a claim to personal estate.

But it is claimed by the learned counsel for the heirs that sums allowed, awarded and paid, under the act of congress of June 5, 1882, were not in payment of any claims against the United States for damages done by the confederate cruisers during the war of the rebellion, but mere donations or gratuities; that the sum of $15,500,000 awarded against Great Britain by the Tribunal of Arbitration under the treaty of Washington, was awarded for damages done by the confederate cruisers Alabama, Florida and Shenandoah and their tenders, and that the tribunal determined and adjudged that Great Britain was not responsible for the damages done by the other confederate cruisers.  While this is so the claims presented to the tribunal embraced the damages done by all the confederate cruisers, and the tribunal awarded the gross sum of $15,500,000 "for the satisfaction of all claims referred to the consideration of the tribunal, conformably to the provisions contained in Article VII, of the aforesaid treaty" and declared that "all the claims referred to in the treaty as submitted to the tribunal are hereby fully, perfectly, and finally settled," and the United States received that sum in full settlement and bar of all the claims submitted.  The fund was then in the United States treasury, and it was exclusively within the power and discretion of congress to determine how it should be distributed.  By the act of June 23, 1874, congress provided for the allowance and payment of claims for damages done by the Alabama, Florida and Shenandoah, and after all such claims were paid, it was found that a large part of said fund still remained in the treasury; and by the act of June 5, 1882, it

provided for the allowance and payment out of said fund of claims for damages done by other confederate cruisers during the late rebellion, "including vessels and cargoes attacked on the high seas," and therein prescribed the rules by which the damages done to property should be measured. This act provides for the allowance and payment of claims for damages to *property* to the persons damaged, and only to the extent of their net damages, deducting what might have been received from other sources to be proved in the manner provided therein. Is it in the nature of a donation or gratuity, to those who had no *claim?* or is it a recognition of claims for damages to property, already existing? Upon this point we deem a quotation from the opinion of Mr. Justice STORY in *Comegys* v. *Vasse, supra,* appropriate. In discussing the question whether the claim before it is admitted as a right to property he says : "The theory, too, that indemnification for unjust captures is to be deemed, if not a mere donation, as in the nature of a donation as contrasted with right, is not admissible." "The very ground of the treaty is, that the municipal remedy is inadequate, and that the party has a right to compensation for illegal captures, by an appeal to the justice of the government. It was never understood that the case was one to which the doctrine of donation applied. The right to compensation, in the eye of the law, was just as perfect, though the remedy was merely by petition, as the right to compensation for an illegal conversion of property, in a municipal court of justice." "It recognized an existing right to compensation, in the aggrieved parties, and did not, in the most remote degree, turn upon the notion of a donation or gratuity." And so in this case, the idea of a donation or gratuity is nowhere to be found in the act. The United States had the money in its treasury which it had no equitable right to retain and sought to distribute it to those justly entitled to it in payment of their claims for damages to their property.

The will giving the widow the use and income of the fund during her life, with the right to apply to her use, if needed, any part of the principal, making her the sole judge of the need

of so doing, we are of opinion that she is entitled to the posses-sion and management of it ; but as she will be charged with the trust of managing and preserving it for the heirs who are to take what may be left at her death as well as for herself, we think it but reasonable, under the peculiar circumstances of this case, that, before it is paid over to her, she be required to give a bond to the judge of probate in the sum of $5000 with sureties to be approved by him, conditioned for the faithful management and preservation of the fund according to the terms of the will.

The court answers the questions as follows :

1. The balance in the hands of the complainant as adminis-trator passed to the widow by the third clause of the will.

2. The widow is entitled to its possession and management upon giving bond as herein required.

> *Bill sustained.   Costs for complainant*
> *to be paid out of the estate.   Decree*
> *in accordance with this opinion.*

PETERS, C. J., WALTON, VIRGIN, FOSTER and HASKELL, JJ., concurred.