ADAH L. FULLER, and another, in equity,

*vs.*

ALBERT T. FULLER, and others.

Kennebec.    Opinion May 26, 1892.

*Will. Devise. Life Tenant. Full possession. Trust. R. S., c. 74, § 16.*

A testator gave, by his will, to his wife, the use of his homestead, furniture, &c., for life, and to his son John an undivided third of the homestead and added this clause, " If the said John, after the death of my wife, will pay to his brother and sisters, then living, one hundred dollars each, he shall then come in full possession of the house, lot and furniture, including crockery and other household-ware." *Held*; that the acceptance of the devise creates an obligation to pay the legacies to his brother and sisters; that upon their payment, they being a charge on the real estate, he will then take an absolute title to the property.

*Also*, no duty implying a trust being imposed on the executors respecting the furniture, &c., the legatee (being the widow,) having a right to its use for life, is entitled to its use and possession without giving security to the remainder man.

A testator gave his widow such portion " of his money and credits," or the whole of it, as she might deem necessary for her comfort and support without being restricted in any manner from receiving the same, her receipt being all the voucher required. He then gave what " shall remain in the estate," after the widow's death, to be equally divided among the then living

heirs, with a provision that such shares which might go to certain minors were to be deposited in the savings bank until their majority. *Held*; that the money and credits are to remain in the custody of the executors, who are to supply the demands of the widow accordingly, holding the property in trust to be accounted for and distributed after her death.

ON REPORT.

Bill in equity, heard on bill and answers to obtain the construction of the will of Thomas Fuller, late of Augusta, deceased, testate. The material portions of the will are as follows:

"After the payment of my just debts, funeral charges and expenses of administration, I dispose of my estate as follows:

"1st. To my beloved wife, Adah L. Fuller, the use of the house, garden connected therewith, and the furniture, and crockery and other household-ware now in the house occupied by me as residence, or which may be there at the time of my death, during her life.

"2nd. From any money standing to my credit in any bank or of moneys due me from other parties after my death, which are collectible, the said Adah L. Fuller shall be permitted to take such portion of the whole of it as she may deem necessary for her comfort and support, without being restricted in any manner from receiving the same; her receipt for any such amount shall be all the voucher required in accounting for the same.

"3rd. To my son, John G. Fuller, I will and bequeath one undivided third of the lot of land bought of John Dorr by Arthur Hall, T. Fuller and A. T. Fuller, and being the same lot of land on which my present residence on North street in this city is located; and if the said John G. Fuller after the death of my said wife, Adah L. Fuller, will pay to his brothers and sisters then living, the sum of one hundred dollars each, he shall then come in full possession of the house, lot and furniture, including crockery and other household-ware, which are now in my possession or may be in the house at my death or at the death of the said Adah L. Fuller if she survives me, my present residence as above named. . . .

"5th. I also bequeath to Eida Fuller, Elbert Fuller and Hattie Fuller, my grandchildren, jointly, the sum of five dollars

to be placed in the savings bank by the executors for them until they reach the age of twenty-one, when each one of them as it arrives at that age shall receive its accumulated share, and if either of them should die before reaching the age of twenty-one years, the survivors shall share the portion of the deceased between them. Also any portion of my estate which in like manner should come to them as heirs after the death of my wife, Adah L. Fuller, shall also be deposited in the savings bank until they reach the age of twenty-one years and then divided as above stated. . . .

"7th. Any money or property not herein devised which after my death and the death of Adah L. Fuller aforesaid, shall remain in the estate, shall be equally divided amongst the then living heirs in the manner heretofore stated, with particular reference to the share of my grandchildren, Eida, Elbert and Hattie Fuller, that they may enjoy the full benefit of their portion of this inheritance.

"8th. For the faithful carrying out of my wishes expressed in this, my last will and testament, I appoint as my executors my beloved wife, Adah L. Fuller, and my son, John G. Fuller, to act as such jointly, and having the fullest confidence in their integrity and ability I desire that no bonds be required of them, and that they shall give no bonds for the faithful performance of this trust.

"In testimony whereof, I hereunto set my hand and seal, and declare this to be my last will and testament, this fifteenth day of January, in the year one thousand eight hundred and ninety.

                                        Thomas Fuller."

The plaintiffs submitted questions to the court inquiring whether John G. Fuller took under the will a fee simple in the homestead, unincumbered by a life estate in Adah L. Fuller. If not, what title did he take? Whether he will take a fee simple in the homestead after Adah's death upon paying his brother and sisters one hundred dollars each. If not, what title will he take?

Whether, by the terms of said will, the duties of the complainants as executors, &c., continue until after the death of the said

Adah and until they as such shall have paid to the heirs of the testator any portion of the estate remaining after the death of said Adah.

Whether, by the terms of said will any trust is created as to the furniture, crockery and other household-ware mentioned in the first item of said will, and whether the complainants are made the trustees thereof under said will; and if yes, what are the terms of said trust and must the trustees give bonds therefor, and if no trust, have the complainants done all that can be required of them under the will when they have delivered all of said furniture, crockery and other household goods to the said Adah L. Fuller.

Whether, by the terms of said will any trust is created as to any portion of the estate of said testator that may come to Eida Fuller, Elbert Fuller and Hattie Fuller, at the decease of said Adah L. Fuller, if at the death of said Adah, said Eida, Elbert and Hattie shall not have arrived at the age of twenty-one years, and whether the complainants are made the trustees under said will; and if yes, what are the terms of said trust and must the trustees give bonds therefor; and in case of the decease of either said Eida, Elbert and Hattie or more than one of them does the share, or do the shares, of the one or more deceased go to the survivor or survivors and in case of the death of all of them said Eida, Elbert and Hattie, then what disposition shall be made of their portion of this estate.

What disposition shall be made of any property not bequeathed or devised in said will and belonging to said estate that shall remain after the death of said Adah.

*E. S. Fogg*, for plaintiffs.

WHITEHOUSE, J. This is an amicable proceeding in equity for the purpose of obtaining a judicial construction of the will of Thomas Fuller. It is presented on bill and answer, the defendants admitting as true all the statements of fact in the bill.

The will is inartificially drawn, but it is not difficult to discern the real purpose of the testator pervading the instrument. And although certainty and security in the disposition of landed

property suggest a reasonable regard for settled rules of construction, as aids in discovering the intention, still when that intention can be gathered from the whole will taken together, the law will not suffer it to be defeated because in a particular clause an estate is not described with technical accuracy.

By the first item of the will the testator gives to his wife, Adah L. Fuller, the "use" of the homestead " during her life." It is a familiar principle that the gift of the income of real estate is a gift of the real estate itself, and that a gift of the use of real estate for life, is the gift of a life estate. *Sampson* v. *Randall,* 72 Maine, 111. The effect of the plain and unambiguous language of this item is, therefore, to give the widow a life estate in the entire homestead, and the estate created in favor of the son, John G. Fuller, in the homestead, is subject to the life estate of the widow.

By the third item of the will, the testator first "wills and bequeaths" to his son, John G. Fuller, an undivided third of the homestead, and then adds : "If the said John G., after the death of my wife, Adah L. Fuller, will pay to his brother and sisters then living the sum of one hundred dollars each, he shall then come in full possession of the house, lot and furniture, including crockery and other household-ware." The quantity of interest thus devised must be determined with reference to the provision of the statutes (R. S., c. 74, § 16,) that, "A devise of land conveys all the estate of the devisor therein, unless it appears by his will that he intended to convey a less estate," and to the great maxim of testamentary construction already noticed, that the obvious " will" of the testator shall govern, and not fail for want of apt phrases or conventional formulas.

According to etymology the word "possess" means to sit upon ; hence to occupy in person, to have and to hold. Thus the first lexical meaning given to the word in the Century Dictionary is, " To own ; have as a belonging, property." The second definition in Webster's dictionary is, " To have legal title to." In popular usage the word "possessions" includes real and personal property to which one has title ; as " his

landed possessions," "the French possessions." So in Scripture, "The house of Jacob shall possess their possessions." The legal idea of "possession" though varying according to circumstances, still embraces the conception of right as well as that of physical control. In the first clause of this item, the testator had already willed to John G. an undivided third of the same homestead, and when it is considered that a life estate had already been given to the widow and that John G. could only come into "full possession" of this property upon the payment of legacies amounting contingently to five hundred dollars, the conclusion is irresistible that the testator intended to give this son, on payment of the legacies named, the same estate in the entire homestead which he had already given in the undivided third part, and that in both instances he contemplated a remainder in fee after the termination of the widow's life estate. Whether the provision respecting the payment of these legacies was intended as a condition precedent or as a condition subsequent is not important to this inquiry. If, as the language of this clause implies, the property was intended to be devised on a condition precedent, no further security for the payment of the legacies could be necessary; if on a condition subsequent the estate would, indeed, vest in the devisee immediately on the termination of the life estate only to be defeated by failure to pay the legacies within a reasonable time; or even if the provision is construed as merely imposing upon the devisee the duty of paying the legacies, thus making them a charge upon the real estate the result in either view, so far as the point under discussion is concerned, is substantially the same. An acceptance of the devise in either case involves the obligation to pay the legacies, and the situation is, therefore, equally expressive of a purpose to give the devisee a remainder in fee. *Bugbee* v. *Sargent*, 23 Maine, 269; *Merrill* v. *Bickford*, 65 Maine, 119; *Drew* v. *Wakefield*, 54 Maine, 291; 2 Redf. Wills, 304, 323; 3 Jarm. Wills, 22 *et seq.*; 2 Perry on Trusts, § § 571, 572.

It is, therefore, the opinion of the court that, "if John G. Fuller after the death of Adah L. Fuller will pay to his brother and sisters then living the sum of one hundred dollars each" he

will then own the house and lot in fee simple and have an abso-
lute title to the furniture including crockery and other house-
hold-ware described in the third item of the will.

The second item of the will provides that the widow "shall
be permitted to take such portions" of his money and credits,
" or the whole of it, as she may deem necessary for her comfort
and support, without being restricted in any manner from
receiving the same. Her receipt for any such amount shall be
all the voucher required in accounting for the same." The
seventh item further provides that any money or property not
herein devised, which "shall remain in the estate" after the
death of the widow, shall be equally divided among the then
living heirs.

It is undoubtedly a settled rule in this State to allow the
donee for life to have the actual possession of personal property
thus bequeathed unless the will otherwise provides. And it is
now equally well settled that personal property may be limited
over by way of remainder after the expiration of a life interest.
*Sampson* v. *Randall, supra; Starr* v. *McEwan*, 69 Maine,
334; *Warren* v. *Webb*, 68 Maine, 133. But where the prop-
erty consists of money which may be easily lost or wasted the
general rule is that a legatee must give some reasonable security
to preserve the funds for the remainder-man, or the money may
go into the hands of a trustee of whom a bond may be required.
*Whittemore* v. *Russell*, 80 Maine, 297.

While the testator was here careful to secure to his widow
not only the income of his money and credits, but the principal
also, if she deemed it necessary for her comfort and support,
he was no less careful to provide in subsequent items that any
balance not expended by the widow should be divided among
his heirs, and that the share which might thereby come to three
grand-children named, should be "deposited in the savings
bank until they reached the age of twenty-one years" and then
divided as therein specified. In these provisions, and that
declaring the widow's receipt to be the only voucher required in
accounting for the funds, it is clearly implied that the money
and credits were to remain in the custody of the executors who

were to supply without restriction all the demands of the widow and at her decease the surviving executor was to render an account of what was left that it might be distributed among the heirs. The share belonging to the minors named, was to be deposited in some bank to be selected by the executor.

It was evidently contemplated by the testator that the authority of the surviving executor should be thus continued after the death of his wife for the purposes named ; and such a course is expedient and desirable. Whenever any duty imply- ing a trust is created by a will and there is no special designa- tion of the executor or any other person as trustee, nor any provision in the will for the appointment of the trustee, it devolves upon the executor as such to administer the estate according to the provisions of the will. *Nason* v. *Church*, 66 Maine, p. 108 ; *Richardson* v. *Knight*, 69 Maine, p. 288. By the express desire of the testator, the executors are relieved from giving bonds ; but when it appears necessary or proper the judge of probate on application of any party interested may require them to give bonds as in other cases. R. S., c. 64, § 8.

The "furniture including crockery and other household-ware " mentioned in the first and third items of the will do not belong in the category of articles *quae ipso usu consumuntur*. 2 Will. Exrs. 1397 ; *Marston* v. *Carter*, 12 N. H. 159. They may depreciate by using, but as they are not necessarily consumed in that way, the legatee having a right to the use of them for life is under ordinary circumstances entitled to have and retain possession of them upon signing and delivering to the executor an inventory of them without giving security to the remainder-man for their preservation. 2 Will. Exrs. 1396 ; *Whittemore* v. *Russell*, *supra*. No duty implying a trust is imposed on the executors with respect to the "furniture including crockery and other house- hold-ware" in this case. As one of them has a life estate in those articles and the other the remainder, the matter is easily adjusted between them.

All parties being equally desirous of obtaining the opinion of the court, no costs are to be allowed to any of them ; but the executors may charge in their administration account such

expenses as have been necessarily incurred by them in these proceedings, and the judge of probate will make such allowance as may be deemed just and reasonable.

*Decree accordingly.*

PETERS, C. J., WALTON, LIBBEY, EMERY and HASKELL,. JJ., concurred.