## WAYNE et al. v. HARTRIDGE et al.

1. Where a testator bequeathed all of his property real and personal, of which he died seized and possessed (except a portrait), to his wife to the exclusion of his children by a former marriage, and the widow as executrix administered all the estate, which consisted, so far as then known, solely of the personal property which was in actual possession of the testator at the time of his death; and where after the death of the executrix an administrator de bonis non cum testamento annexo upon

the estate of the testator .was appointed and qualified, who collected a "claim" for "longevity pay" due to the testator for services rendered as a cadet of the military academy of the United States and as an officer in the United States army, but payment of which had been withheld, on account of an erroneous construction of the law by the disbursing officers of the United States, until after the death of the testator, such claim was *property* within the meaning of the will, and the testator was "seized and possessed" of it at the time of his death, and it passed under his will to his widow; and on her dying childless and intestate before the claim was collected, it descended to her heirs at law under the statute of distributions.

2. The judge, to whom the case was submitted for decision without a jury under an agreed statement of facts, did not err in awarding the fund arising from the collection of the "claim" to the heirs at law of the deceased · widow of the testator, instead of to the heirs at law of the testator.

JUNE 14, 1917.

Appeal.    Before Judge Davis Freeman.    Chatham superior, court.    October 14, 1916.

This case was tried upon the record and an agreed statement of facts, which are substantially as follows: Henry C. Wayne was a cadet at the United States Military Academy at West Point for four years from 1839 to 1843. After graduation he served as a captain in the United States Army until the war between the States. At the outbreak of the war he resigned from the United States army and served as an officer in the army of the Confederate States throughout the war, becoming a brigadier-general. After the war General Wayne resided in Savannah, Georgia, until his death on March 15, 1883. After his death a will in his handwriting, dated April 19, 1882, was filed in the court of ordinary of Chatham county, and was probated in common form on April 13, 1883. His widow, Mrs. Adelaide Hartridge Wayne, qualified as executrix of the will. General Wayne owned no real estate at the time of making his will, nor at the time of his death. Surviving him were his children by his first wife,- namely, his son, Rev. Henry N. Wayne, and his daughter, Mrs. Mary Wayne Patterson, both of whom are in life and his sole heirs at law. He also left in life his second wife, Mrs. Adelaide Hartridge Wayne, who died intestate in June, 1913, leaving no children in life, her heirs at law being her nephews and nieces, E. B. Hartridge and others.

Under section 15 of the act of Congress of July 5, 1838 (5 Stat. 258, c. 162), commissioned officers of the United States army re-

ceived one additional ration per diem for every five years service in the United States army. This was commonly known as "longevity pay," and was paid to Captain Wayne and other officers. In computing the amount due all officers the United States government did not count the time of service as a cadet in the Military Academy at West Point. This was the uniform rule followed by the government until the decision of the Supreme Court of the United States in United States v. Watson, 130 U. S. 80 (9 Sup. Ct. 430, 32 L. ed. 852). After this decision the government allowed additional "longevity pay" (that is, ration pay computed on the basis of service at West Point), except to such officers as served in the Confederate army. The government ruled that, under the act of March 2, 1867 (section 3480 of the Revised Statutes of the United States [Comp. St. 1916, § 6387]), this additional "longevity pay" could not be allowed or paid to officers who served in the Confederate army. By act of Congress of July 6, 1914 (38 Stat. 454, c. 136, U. S. Comp. St. 1916, § 6387a), section 3480 was repealed in part. After the act of July 6, 1914, a claim was filed for this additional "longevity pay" due Henry C. Wayne as an officer in the United States army, and this claim was allowed by the government in 1914, and reported to Congress by the secretary of the treasury under the deficiencies appropriation act of July 7, 1884 (23 Stat. 254, c. 334). The money was appropriated by Congress to pay this claim, that is, the additional rations to Henry C. Wayne for the years 1839 to 1861, allowed by the government in 1914, under the act of 1839, on the basis of adding the four-years service at West Point.

W. H. Wade was appointed administrator de bonis non cum testamento annexo of the estate of Henry C. Wayne, on November 18, 1914, by the ordinary of Chatham county. This administrator has on hand $1406.80, less expenses, being the additional "longevity pay" collected by him from the government, as heretofore set out. The administrator filed an application for letters dismissory in the court of ordinary of Chatham county, for the purpose of having determnied whether this fund in his hands should be paid over to Henry N. Wayne and Mrs. Mary Wayne Patterson, the children of Henry C. Wayne by his first wife, or whether the fund should be paid over to E. B. Hartridge and W. C. Hartridge, the heirs at law of Mrs. Adelaide Hartridge Wayne, the

second wife of General Henry C. Wayne. Henry N. Wayne and Mrs. Mary Wayne Patterson filed their caveat to the application, on the ground that the administrator had in his hands money to which they were entitled. E. B. Hartridge and W. C. Hartridge also filed their caveat on the ground that they were entitled to the money in the hands of the administrator. The ordinary sustained the caveat of Henry N. Wayne and Mrs. Mary Wayne Patterson, and directed the administrator to pay to them the fund in his hands, and overruled the other caveat. The case was appealed to the superior court, and was tried by Hon. Davis Freeman, judge of the city court of Savannah, by the consent of all the parties, without the intervention of a jury, upon the record and an agreed statement of facts, he acting in the place of the judge of the superior court, who was disqualified. Judge Freeman sustained the appeal and caveat filed by E. B. Hartridge and W. C. Hartridge, and directed the administrator to pay over the money in his hands to them. To this judgment Henry N. Wayne et al. excepted.

*Adams & Adams,* for plaintiffs in error.

*O'Byrne, Hartridge & Wright* and *Morris H. Bernstein,* contra.

HILL, J. (After stating the foregoing facts.) General Henry C. Wayne died in 1883, leaving a will which was probated in common form, and his widow, Mrs. Adelaide Hartridge Wayne, qualified as executrix. The estate administered by her consisted only of personal property. In 1914, after the death of the executrix, W. H. Wade was appointed administrator de bonis non cum testamento annexo upon the estate of the testator, and there came into his hands for distribution the money claimed by the two sets of caveators. The question arises, which set of claimants are entitled to the fund—the children of the testator, or the nephews of the widow of the testator? The answer to this question depends upon the construction placed upon the will of the testator, which consisted of a single item and which was in his handwriting. The clause of the will under review, and the only one material, is as follows: "I hereby give and bequeath to my wife, Adelaide Hartridge Wayne, all of the property real and personal of which I shall die seized and possessed, except the portrait of my mother, by Alexander, which I hereby give and bequeath to my son, Henry N. Wayne." Under this item, did the testator die *"seized and possessed"* of the property which was commonly known as "longevity

pay," so that it passed under the will to his wife and at her death, intestate, to her heirs at law? Or, was there an intestacy as to this fund, and did it go to the heirs at law of the testator?

Under the Civil Code, § 5, the term "property" includes both real and personal property. "Property in an article is the right to have and use it subject to law." *Fears* v. *State,* 102 *Ga.* 274, 279 (29 S. E. 463). In the case of Erwin *v.* United States, 97 U. S. 392 (24 L. ed. 1065), the plaintiff brought suit in the Court of Claims, to recover the proceeds of certain cotton alleged to have belonged to him, and to have been seized and taken from his possession in 1865 by the military forces of the United States, and to have been sold by the agent of the Treasury Department and paid into the treasury. It was held that "the claim of the owner against the government constitutes property, and passes to his assignee in bankruptcy," etc. In *Camp* v. *Vaughan,* 119 *Ga.* 131 (46 S. E. 79), officers of the army of the United States, during the war.between the United States and the Confederate States, appropriated to the use of the army certain supplies and commissary stores belonging to Vaughan. After the war Vaughan filed with the United States commissioner of claims, under the act of Congress approved March 3, 1871 (16 Stat. 524, c. 116, § 2), a claim for compensation for the supplies so taken. Subsequently his petition was referred to the Court of Claims, which found and reported to Congress that a certain amount was due and unpaid on this claim. In 1902 Congress passed an act (32 Stat. 207) for the allowance of certain claims for stores and supplies reported by the Court of Claims under the above-cited act, and found by the Court of Claims to be due to the administrator of Vaughan. Vaughan made his will in 1879, and died in 1881. It was held by the Supreme Court, that the fund appropriated by Congress in 1902 passed under the will to the residuary legatees therein named, and was not a mere gratuity which descended to the heirs at law of Vaughan under the statute of distributions. The court cited in support of its ruling: Comegys *v.* Vasse, 1 Pet. 193 (7 L. ed. 108); Erwin *v.* United States, 97 U. S. 392 (24 L. ed. 1065); Phelps *v.* McDonald, 99 U. S. 298 (25 L. ed. 473); Williams *v.* Heard, 140 U. S. 529 (11 Sup. Ct. 885, 35 L. ed. 550); Pierce *v.* Stidworthy, 79 Me. 234, 239 (9 Atl. 617); 1 Underhill on Wills, 351, and authorities cited.

The testator in the instant case bequeathed "all of the property real and personal" of which he died seized. The term "property" is a very comprehensive one, and is used not only to signify things real and personal owned, but to designate the right of ownership, and that which is subject to be owned and enjoyed. Pell *v.* Ball, Spears' Eq. (S. C.) 48, 83. See 6 Words & Phrases, 5699; *Ex Parte William Law,* 35 *Ga.* 285, 294 (Fed. Cas. No. 8126) ; Whitehead *v.* Gibbons, 10 N. J. Eq. (2 Stockt.) 230, 239. Under the above definition the term is broad enough to include the claim for "longevity pay" against the United States. Was it the intention of the testator to dispose of this claim by his will? The general rule is that it will be held that the testator intended to dispose of his entire estate, and not to die intestate either as to the whole or any part thereof. *McMichael* v. *Pye,* 75 *Ga.* 189, 191; 40 Cyc. 1409 (b), and note (4). But we are not left to presumptions; for the testator disposed of *all* his property real and personal, by the terms of the will itself. It is argued that the testator was not "seized and possessed" of this property at the time of his death, and that the above language limits the property intended to pass under the will to that which testator actually had in his possession at that time. According to some authorities, "The term 'seized' is equivalent to the term 'possessed.'" Northern Pac. R. Co. *v.* Cannon, 46 Fed. 224, 232. And see 6 Words & Phrases, 5694, 5696, 5463, 5464, 5467; 7 Words & Phrases, 6395, 6396. It is the intention of the testator which must control, unless that intention contravenes some rule of law. Civil Code, § 3900. It seems perfectly clear that the testator by his will intended that *all of his property* of which he died seized (except his mother's portrait, which he left to his son) should go to his wife. This included everything he had a right to bequeath or devise, including the claim for "longevity pay." This "longevity pay" was due to General Wayne at the time of his death, and was withheld from him by the disbursing officers of the United States in his lifetime, under an erroneous construction of the law, as appears from the record. But the act of Congress in 1914 allowed its payment, and the present administrator collected it. For the time payment was withheld it was still a claim and the property of the testator. As was said by the able judge who tried the case and rendered judg-

ment: "That its value was more or less speculative and depend-
ent on the future attitude of the debtor did not destroy it; it was
analogous, in this respect, to a debt barred by the statute of lim-
itations." From what has been said and the authorities cited, we
conclude that the "claim" for the "longevity pay" was property
of the testator of which he died seized and possessed, and that it
went with the other property bequeathed to the wife; and that the
court below was right in sustaining the caveat on appeal from the
court of ordinary, and in directing the administrator to pay over
the fund in his hands to E. B. Hartridge and W. C. Hartridge as
heirs at law of Mrs. Adelaide Hartridge Wayne, the wife of the
testator at the time of his death.

*Judgment affirmed. All the Justices concur.*