RALPH W. CROCKETT, APPELLANT FROM DECREE OF
PROBATE COURT IN RE ESTATE OF HORACE LIBBY.

Androscoggin.    Opinion March 20, 1931.

*Ralph W. Crockett*, for appellant.
*George C. Webber*, for appellee.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRING-
TON, THAXTER, JJ.

FARRINGTON, J. One Horace Libby of Lewiston, Maine, died April 17, 1924. His will, drawn April 2, 1924, contained the following provision: "Fourth: — I give and bequeath unto Mrs. Blanche H. Smith now of Industry, Maine, the sum of Eight Thousand Dollars, together with all my household furniture and furnishings contained in my residence at No. 544 Main Street, in said Lewiston, with the exception of my slate top table and old fashioned tall standing clock hereinafter mentioned provided she be living at my death." A few days before his death he had ordered and had put into his cellar ten tons of coal billed on April 11, 1924, at $167.00. This bill was paid by the executor, Ralph W. Crockett, May 15, 1924, and the full amount of coal was included in the inventory at that figure. Mrs. Smith used all of this coal after the death of the testator, making no payment to the executor for the same, and in argument before this court claims it was a part of "household furniture and furnishings" bequeathed to her under the fourth item of the will. In that connection it is to be noted that in Item Twentieth of the will Mrs. Smith was bequeathed the "free use and occupancy of the Southwesterly tenement in said dwelling house at No. 544 Main Street, as long as she shall be living."

On May 29, 1924, the executor wrote as follows to Mrs. Smith, who had been the testator's housekeeper: "You will remember that he (Mr. Libby) had eight tons of nut coal and two tons of pea coal put in just before he died. I have paid the bill and it amounts to $167. This coal, as you will understand, is not included in your legacy of household furnishings, but must be accounted for as a part of the Estate. As you doubtless intend to live in the house, I presume you will want this coal, and we can arrange to have you take it over at the cost price, $167.00."

On May 31, 1924, Mrs. Smith wrote the following in reply: "Regarding the coal, I think you must have overlooked the fact that Mr. Libby ordered the coal himself before he died and told me to present the bill to you for payment. He afterwards said to me, 'Well, Blanche, you've got coal enough to keep you warm next winter.' I said, 'Yes, Horace, and I hope we'll all be here to enjoy it as we have this winter,' and he said, 'Well, I don't know about myself, but I got this coal for you.' "

There being insufficient personal property to pay specific cash legacies in full, an installment of fifty per cent was paid to Mrs. Smith, among other legatees, on April 10, 1925.

On March 18, 1927, ten per cent more was paid and from Mrs. Smith's $800.00 was deducted by the executor $167.00, the appraised value of the coal, and a check for $633.00 was sent to her with the following letter: "I inclose herewith check for $633.00 being ten per cent of your cash legacy under the Will of Horace Libby, late of Lewiston, less coal to the amount of $167.00. . . . Please sign and return to me at once the enclosed receipt."

On the back of the check was the following: "This check is in full of a payment of 10% of cash legacy to payee under will of Horace Libby late of Lewiston, Me., less the amount of $167.00 due the Horace Libby Estate for coal taken by the payee at the inventory value as follows: —

| | |
|---|---|
| 10% of legacy | $800.00 |
| Less coal | 167.00 |
| | $633.00" |

The following receipt was sent with the check: "Received of Ralph W. Crockett, Executor of the Will of Horace Libby late of Lewiston, Maine, Six Hundred and Thirty three Dollars, being ten per cent of the amount of my cash legacy under said Will less one hundred and sixty-seven dollars due the Horace Libby Estate from me for coal taken at the inventory value as follows: —

| | |
|---|---|
| Ten per cent of legacy | $800.00 |
| Less amount due for coal | 167.00 |
| | $633.00 |

An amount representing fifty per cent of said legacy has previously been paid me by said Executor."

This check dated March 18, 1927, was returned by Mrs. Smith to the executor, the date of return not appearing of record, but was finally accepted by her August 19, 1927, when she called at the office of the executor, took the check and signed the receipt referred

to above. There is nothing in the bill of exceptions, and we can not look outside of what is recorded therein, to show that Mrs. Smith did not voluntarily relinquish and waive any rights she had to the coal, if any right she did have. Certainly the receipt which she signed was intended to be a receipt for $800.00 and she must have signed it with full knowledge of this fact.

In the second account filed by the executor, the Judge of Probate refused to allow the item which showed payment of $800.00 "on account of specific cash legacies" to Blanche H. Smith. The executor appealed to the October Term, 1930, of the Supreme Court of Probate for Androscoggin County. At the December Term, 1930, the presiding Justice affirmed the decree of the Judge of Probate.

The case comes to this court on exceptions to the following rulings by the presiding Justice:

"1. I rule that the coal in question did pass to Blanche H. Smith under the will. 2. I rule that Blanche H. Smith was not estopped to claim title to the coal by reason of signing the receipt and cashing the check presented to her by the executor."

It appears from the bill of exceptions that witnesses were permitted to testify, without objection on the part of the executor, that just prior to his death the testator told several persons that he had provided the coal for Mrs. Smith's use. The presiding Justice, however, specifically found that there was not sufficient evidence to show a gift during the lifetime of the testator.

The Justice presiding in the Supreme Court of Probate based his decree on his finding that the coal was included within the scope of the testamentary provision of the testator as to "household furniture and furnishings" and that for that reason the executor could not be allowed the credit of $800.00, which represented a ten per cent installment payment on Mrs. Smith's $8,000.00 legacy. The decree contained no finding of fact, but stated, "It is familiar law that a creditor may by acceptance of a smaller sum than the amount legally due lose his right to assert a claim for the balance." The decree goes on, "In my opinion an executor is a trust officer who is bound to administer the estate in his charge in accordance with the terms of the will and that he has not fulfilled his trust by

virtually compelling a legatee to go without a much larger sum bequeathed to her unless she assents to his illegally withholding a portion of the fund."

With the first paragraph of the portion of the decree above quoted we are in entire accord. With the general statement contained in the second quoted portion as above we also agree, but whatever may have been the facts in this case, we find within the bill of exceptions nothing to indicate bad faith on the part of the executor, no act of concealment of facts, no misrepresentation, nor any attempt to take unfair advantage of Mrs. Smith. In the complete absence of any of these elements, this court is not concerned with what might have been included in the bill of exceptions which would or might tend to indicate their presence. There well may have been an honest dispute as to ownership in or the title to the coal, a difference of opinion between the executor and Mrs. Smith as to the legal right to the coal. Certainly the executor who, under the inventory, was charged with the coal at the appraised value of $167.00 was under the obligation and duty of protecting the estate to that extent. After receiving the check, letter, and receipt on March 18, 1927, Mrs. Smith had five months within which to fully consider the matter, and she well may have felt it was not worth while to lay further claim to the coal and that the wise course was to waive and abandon any rights she may have felt she had and to sign the receipt and thereby acknowledge the payment to her of the $800.00, representing the ten per cent of her $8,000.00 legacy. This act was necessarily an admission on her part that the coal belonged to the estate. She certainly could not have misunderstood the fact that her signature on the receipt was an acknowledgment that she had received the equivalent of $800.00. We are unable to see why this court, under this bill of exceptions, can do anything except to say that the credit of $800.00 on the second account should have been allowed as representing the intent and understanding of the executor and Mrs. Smith, there being nothing before us indicating anything but good faith and fair business dealings. We do not feel it necessary to consider whether or not coal is comprehended within the intent and meaning of "household furniture and furnishings" because, even if it were, Mrs. Smith could

have, when she signed the receipt, waived and abandoned any rights she may have had to the coal, as we believe she did, and, by so doing, in our opinion she acknowledged that she had received payment of $800.00 with which the executor seeks to be credited. The second account is dated February 17, 1930, about two years and a half after Mrs. Smith signed the receipt. The coal was not in existence then, nor was it in existence in 1927 when the receipt was signed. It was not a question of title to coal in 1927. It was a question of adjusting a dispute as to money values and after ample time for reflection and with all the facts before her Mrs. Smith decided to adjust the differences between herself and the executor and, by signing the receipt, to acknowledge payment to herself of the $800.00. In our opinion she at that time definitely and finally settled with the executor as far as the $800.00 payment was concerned. By signing the receipt, she must have realized that she was thereby placing herself in the position of a purchaser of the coal with the price of which she was credited as a portion of the $800.00 payment to her. With all the facts she was perfectly conversant. While the actual ownership of the coal may have been a matter of law, she chose, on her own judgment as far as the record discloses, to conclude that it belonged to the estate and she settled on that basis. She should not now be heard to say that the coal belonged to her, or that she receipted for anything less than the $800.00.

With no other facts than those disclosed under the present bill of exceptions, if this $800.00 payment to Mrs. Smith had been the final payment on her $8,000.00 bequest and she had later sued for $167.00 claiming that as a balance due her on the ground that she had been paid only $633.00, even with her concomitant claim that the coal belonged to her, she could not have recovered on the record before this court.

"If an offer of money is made to one, upon certain terms and conditions, and the party to whom it is offered takes the money, though without words of assent, the acceptance is an assent *de facto* and he is bound by it. The acceptance of the money involves the acceptance of the condition. Under such circumstances, the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest even can affect this result."

*Anderson* v. *Standard Granite Company*, 92 Me., 429, 432; *Richardson* v. *Taylor, Admr.*, 100 Me., 175; *Fuller* v. *Smith*, 107 Me., 161, 165; principle recognized in *Chapin* v. *Little Blue School*, 110 Me., 415, 420, and in *Price* v. *McEachern et al*, 111 Me., 573; also in *Bell* v. *Doyle*, 119 Me., 383; *Viles* v. *American Realty Company*, 124 Me., 149, 153.

We can see no reason why this well recognized principle should not apply to the case at bar. The payment of a specific legacy by an executor does not require an order of Probate Court as does a distributive share. The executor and Mrs. Smith were dealing with each other as to the payment of a ten per cent installment on her entire legacy. Certain facts perfectly well known to both existed. A receipt was signed acknowledging payment of the full amount of the installment. There is no evidence before us showing any attempt to explain the receipt or indicating any reason why she should not be bound by her apparently well considered act of signing which carried with it the acceptance of the attendant conditions.

The law is so well established in this state and elsewhere that a receipt is *prima facie* evidence of the payment therein stated, and that it is open to explanation and contradiction by parol testimony, that no citation of cases is necessary.

In *Borden* v. *Sandy River and Rangeley Lakes R. R. Co.*, 110 Me., 327, at page 329, the Court said, "The burden resting upon the plaintiff, to escape the legal effect of a release such as this, is a heavy one. Written documents duly signed are not to be lightly disregarded and set aside. Unless fraud exists, or such misrepresentations or suppression of truth as amount to fraud, or unless the parties are so situated that an unconscionable advantage is taken through lack of mental appreciation of the nature of the transaction or otherwise, such settlements stand; and they should stand. The law favors settlements, and, in the absence of the elements above stated, will enforce them."

While this was a case involving a release given in a suit for personal injuries, the reasoning may well be applied to the case at bar. In the case just cited there was an effort to set aside the release, but in the instant case the record discloses no testimony indicating any effort to rebut the *prima facie* case established by the receipt

so that, as a natural sequence, it must stand as conclusive of that which it purports to state. "In the strict legal sense a receipt is merely a written admission of the existence of a fact, either prior to or at the date of the receipt. It is *prima facie* evidence of such fact, and when uncontradicted establishes it as a matter of law, but, like any other admission, it is not conclusive evidence of the fact admitted and may be explained, modified, or even contradicted by parol evidence." *Alexander et al v. Meredith et al* (Tex.), 262 S. W. at page 112. To the same effect are *Cunningham, Admr. v. Batchelder*, 32 Me., 316; *Wherely v. Rowe et al*, 106 Minn., 494, 119 N. W., 222, 223; *Gleason v. Sawyer*, 22 N. H., 85; *New Jersey Flax Cotton Wool Co. v. Mills*, 26 N. J. Law, 60; *Riley, Applt. v. City of New York*, 96 N. Y., 331.

The presiding Justice, having made no findings of fact, ruled that Mrs. Smith was "not estopped to claim title to the coal by reason of signing the receipt and cashing the check presented to her by the executor." As far as this record is concerned, we regard this language, and so treat it, as equivalent to saying that, although she signed a receipt for $800.00 with full knowledge of all its terms and conditions, she can later claim and recover the $167.00 represented by the coal value which was included in the receipt, even though she fails to explain or contradict that receipt. We regard this as exceptionable error, and the entry must be,

*Exceptions sustained.*
*Appeal sustained.*
*Case remanded to*
*Probate Court for*
*further proceedings.*