Lucille Stone WIKTOROWICZ, Administratrix of the Estate of Benjamin F. Stone

v.

Frederick HALEY, Executor of the Estate of Helen M. Stone.

Supreme Judicial Court of Maine.

March 31, 1969.

George W. Perkins, and Clinton B. Townsend, Skowhegan, for appellant.

William Clifford, and Robert Clifford, Lewiston, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, DUFRESNE, and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

Benjamin F. Stone died in January 1966 leaving a widow Helen, who died in February 1967, and a daughter Lucille by a former marriage. At his death there were in existence five bank accounts amounting to about $24,000 standing in the joint names of Benjamin and Helen.

Under his will, Benjamin bequeathed $2,000 to Lucille, and also provided as follows:

*Second:* All the rest, residue and remainder of my estate, real, personal and mixed, wherever situated and however and whenever acquired of which I may die seized and possessed or to which I may be at the time of my decease entitled, I give, bequeath and devise to my beloved wife, Helen M. Stone, for and during the term of her natural life, to have and to hold the same to her and her assigns to use as she may see fit for her comfort and enjoyment for and during the term aforesaid, with full power and authority in her and at her own option to mortgage, pledge, sell and convey the same; in the event, however, my said wife shall pre-decease me, or in the event there is any of my estate remaining at the decease of my said wife, after adequate provision for her funeral and burial expenses, I give, bequeath and devise any such remainder to my daughter, said Lucille Stone Wiktorowicz.

Helen, the named executrix, deposited the will in the Probate Court, but took no further steps for its probate. Shortly after her husband's death she transferred the accounts to herself. Following her death the will was allowed and Lucille named administratrix c. t. a.

In this jury-waived action the plaintiff, estate of Benjamin F. Stone, seeks to recover from the defendant, estate of Helen M. Stone, the joint accounts, less certain payments therefrom. The decisive issue raised by the plaintiff on appeal is whether the burden of proof to establish ownership of the joint accounts rests on the estate of Benjamin or the estate of Helen. For reasons herein stated, we are of the view that the Court below erred in placing the burden of proof under the circumstances on the plaintiff.

■ First: The ultimate decision must be based (1) on what constituted the life estate fund at Benjamin's death, and (2) on what charges were properly made against the fund by Helen and for her funeral and burial expenses. The remainder, with suitable accounting for income on the fund, belongs to the estate of Benjamin for the ultimate advantage of Lucille. It is not necessary for us to determine whether Lucille was the proper party to seek recovery of the remainder. Any recovery by the plaintiff would under Benjamin's will go to Lucille, in any event. Compare Hardy v. Mayhew, 158 Cal. 95, 110 P. 113.

■ Second: Helen during her marriage with Benjamin had substantial earnings

from employment in the shoe industry. The Court below found that Helen was entitled to such earnings as her own under the "wife's earnings" statute,[1] and that any contributions made by her to the joint accounts belonged to her and not to her husband. No objection was raised to this finding. We need not consider further the source of Helen's contributions.

Third: At Benjamin's death it became necessary to determine the interests of Benjamin's estate and of Helen in the joint accounts. The funds of each were mingled in the deposits and therefore an accounting was required.

■ Helen as named executrix acted as a fiduciary with reference to Benjamin's estate, and for our purposes, in particular with reference to Lucille. Crockett Appellant, 130 Me. 135, 154 A. 180; Tapley v. Douglass, 113 Me. 392, 94 A. 486. In acting as executrix, Helen had no less responsibility than had she been authorized under a will duly probated. Indeed, "[a]dditionally to the moral obligation imposed either by express or implied direction of the maker, a statute charges upon every supposed executor having custody of an unprobated will the imperative legal duty of filing it for probate", Nichols v. Leavitt's Estate, 118 Me. 464, 109 A. 6. The statute presently is 18 M.R.S.A. Sec. 9. See also Smith v. Moore, 6 Me. 274.

■ Thus at her husband's death Helen had possession of the mingled funds belonging to her husband's estate and to herself. In our view, it was her duty to separate the funds of each and to account

to the estate for its share.[2] In so acting the burden of establishing her personal interest in the mingled funds was upon her in light of her obligation as a fiduciary. Hence the burden of proof to unscramble the eggs at Benjamin's death now falls on Helen's estate. Petersen v. Swan, 239 Minn. 98, 57 N.W.2d 842.

■ Fourth: Helen, as we have seen, transferred the mingled funds to herself. As executrix or personally, and in either event to the advantage of Benjamin's estate, she paid the following:

| | |
|---|---|
| Allowance to herself as surviving widow from the joint accounts under 9 M.R.S.A. Sec. 515 | $5,000 |
| Legacy to Lucille | 2,000 |
| Benjamin's funeral expenses | 1,195 |
| | $8,195 |

———◆———

The items totaling $8,195 were all properly chargeable against Benjamin's estate before the residue could be ascertained. The funeral and burial expenses of Helen amounting to $1055, plus disbursements by Helen for her "comfort and enjoyment" would come from the remainder received by Helen for life under the second clause of the will.

■ Fifth: Helen, however, did more than act as an executrix although not authorized. She acted as well as the life beneficiary of the residue of Benjamin's estate. In this latter capacity Helen was a trustee or quasi trustee for the remainder

1. 19 M.R.S.A. Sec. 163
    A married woman may receive the wages of her personal labor not performed for her own family, maintain an action therefor in her own name and hold them in her own right against her husband or any other person.

2. Restatement; Trusts 2d, Sec. 179.
    *Duty to Keep Trust Property Separate.* The trustee is under a duty to the beneficiary to keep the trust property separate from his individual property, and, so far as it is reasonable that he should do so, to keep it separate from other property not subject to the trust, and to see that the property is designated as property of the trust.
    Comment:
    a. *Extent of duty.* It is ordinarily the duty of the trustee (1) to keep the trust property separate from his own property; (2) to keep the trust property separate from property held upon other trusts; (3) to earmark the trust property as property of the trust.

interests, and in particular for Lucille. Mallett v. Hall, 129 Me. 148, 153, 150 A. 531; Nelson v. Meade, 129 Me. 61, 65, 149 A. 626.

It was her duty to protect and preserve the funds of the life estate and to expend them only for purposes designated by the testator, that is, for her "comfort and enjoyment".

Our Court said in Pierce v. Stidworthy, 79 Me. 234, 241, 9 A. 617, 619:

"The will, giving the widow the use and income of the fund during her life, with the right to apply to her use, if needed, any part of the principal, making her the sole judge of the need of so doing, we are of opinion that she is entitled to the possession and management of it; but, as she will be charged with the trust of managing and preserving it for the heirs, who are to take what may be left at her death, as well as for herself, we think it but reasonable, under the peculiar circumstances of this case, that, before it is paid over to her, she be required to give a bond to the judge of probate, in the sum of $5,000, with sureties to be approved by him, conditioned for the faithful management and preservation of the fund according to the terms of the will."

In Fuller v. Fuller, 84 Me. 475, 481, 24 A. 946, 948, with reference to a life estate with power of disposal, the Court said:

"But where the property consists of money, which may be easily lost or wasted, the general rule is that a legatee must give some reasonable security to preserve the funds for the remainderman, or the money may go into the hands of a trustee, of whom a bond may be required."

Compare McGuire v. Gallagher, 99 Me. 334, 59 A. 445, where there was no necessity of bond.

Sixth: Here, as we poined out with reference to the estate of Benjamin, Helen continued to hold the mingled funds in two capacities. She was both a trustee or quasi trustee for life, and an owner in her own right. Again, the principles that a trustee must not mingle trust funds with his own property and that he has the burden of proof to establish his personal interest in mingled funds operate to the advantage of Benjamin's estate.

Thus from the death of her husband, Helen has had the burden of proving her own interest in the joint bank accounts. This rule places no undue burden on an executor or a life tenant in Helen's position. How as a practical matter otherwise could the husband's estate, or, let us say, Lucille as a remainderman, determine the extent of the life estate at its inception, the income received and the proper expenditures therefrom?

There is not the slightest suggestion in the case of lack of good faith or waste by Helen in her management of the funds. The Court below found that about $2,000 expended by Helen could properly be charged to the life estate under the power of disposal. The defendant suggests in his brief that about $3,000 was so expended. The difference is of course not material for our purposes on appeal.

To summarize:

(1) The defendant has sustained the burden of establishing that Helen's earnings which went into the joint accounts belonged to her and not to her husband.

(2) The Court below in finding for the defendant, erroneously, in our view, placed the burden of separating the interest of Benjamin's estate from the interest of Helen in the joint accounts, upon Benjamin's estate, and not upon the estate of Helen.

The plaintiff is entitled to a new trial.

The entry will be

Appeal sustained.

MARDEN, J., did not sit.

WEBBER, Justice (dissenting).

I am not satisfied that any error was committed below. The plaintiff has alleged facts in her complaint which if satisfactorily proven would entitle the estate which she represents to recover a money judgment from the defendant. The complaint asserts and rests upon the theory of conversion. The plaintiff therefore assumed the burden of proof upon that issue. Harvey v. Anacone (1936) 134 Me. 245, 249, 184 A. 889. This burden of proof or persuasion never shifts although the burden of going forward with evidence may shift. Hinds v. John Hancock Mutual Life Ins. Co. (1959) 155 Me. 349, 155 A.2d 721, 85 A.L.R. 2d 703. He who assumes the burden of persuasion is subject at all times to the risk of non-persuasion and if he fails to persuade, he loses his case. Foss v. McRae (1909) 105 Me. 140, 143, 73 A. 827; Cox v. Metropolitan Life Insurance Co. (1942) 139 Me. 167, 170, 28 A.2d 143. Defendant by affirmative defense assumed the burden of proving that the money claimed was the result of the earnings of Helen M. Stone within the meaning and protection of 19 M.R.S.A. Sec. 163. That statute provides: "A married woman may receive the wages of her personal labor not performed for her own family, * * * and hold them in her own right against her husband or any other person." After carefully reviewing the evidence, the Justice below concluded that "Mrs. Stone's earnings came from employment in the shoe industry and fall within the protection of the statute." He further concluded that Mr. Stone's earnings were "of questionable sufficiency to support a single person." Upon the whole evidence the Justice found, "Upon consideration, it is held that the existence of a remainder from the Estate of Benjamin F. Stone for the benefit of the plaintiff has not been established." In short, he determined that the plaintiff failed to prove facts essential to recovery by the greater weight of the evidence. On this record it cannot be said that his assessment of the facts is clearly erroneous.

The plaintiff did not by her complaint seek to impose a trust or obtain a court ordered accounting. Under appropriate circumstances such an accounting will be ordered by the Court upon equitable principles. Caverly v. Small (1920) 119 Me. 291, 111 A. 300. We need not here determine the nature and quantum of proof which would have been required of plaintiff, had she elected to seek such a remedy. But see Viele v. Curtis (1917) 116 Me. 328, 330, 101 A. 966. It suffices to say that she has failed to produce satisfactory and persuasive evidence of conversion. I would deny the appeal.

DUFRESNE, J., joins in this opinion.