CARLETON MINING & POWER COMPANY *v.* WEST VIRGINIA NORTHERN RAILROAD COMPANY.

(No. 7294)

Submitted September 20, 1932. Decided October 25, 1932.

P. J. *Crogan,* and *John E. Cupp,* for appellant.
F. E. *Parrack* and *J. V. Gibson,* for appellee.

MAXWELL, JUDGE:

The West Virginia Northern Railroad Company complains of the action of the circuit court of Preston county in sustaining a demurrer to its answer, and in entering a decree on the bill of Carleton Mining & Power Company, requiring, among other things, that said railroad account for and pay over to the plaintiff ''the amount alleged in said bill to have been so received by it for the plaintiff's use and benefit, to-wit, the sum of $45,000.00,'' etc.

At the time the bill was here on certificate (*Mining & Power Co. v. Railroad Co.,* 110 W. Va. 631, 159 S. E. 44), this Court reversed the ruling of the circuit court in sustaining a demurrer thereto, and held that: ''Where a railroad extension, coming within the National Transportation Act, is delivered by its owner to a railroad company under a sale and conveyance subject to the approval of the Interstate Commerce Commission which, upon application of the railroad company, is refused, the owner of the railroad extension may sue in equity to cancel the sale and conveyance and require the railroad company to account for the profits derived by it from the operation thereof.''

After the statutory period for filing the answer had expired, the chancellor, in exercise of sound discretion, permitted an answer to be filed on behalf of the defendant. Code 1931, 56-4-56. The main purpose of the answer seems to be an attempt to re-open the question regarding defendant's inability

to act due to the National Transportation Act—a matter already put at rest by our former decision. While the answer estimated the revenue of the railroad over the period covered by the bill to be $60,000.00, it averred that defendant was "unable to ascertain and state the cost of the movement of said tonnage in that no separate accounting as between tonnage moving from Pierce Extension points and main line points was made and kept * * *." In other words, defendant admitted that it was not in a position to separate the profits from the revenues.

The chancellor sustained the demurrer to the answer on the ground that it was not responsive to the bill. In so far as the answer denies express fraud, we are of opinion that it is responsive to the bill and therefore should have been held sufficient on demurrer. But, being filed and considered in its full force and effect, it avers a situation wherein it would be a vain thing to attempt to require proof of profits realized by the defendant in the operation of the Carleton Branch. As already noted, the defendant says that because there was no separate accounting as to tonnage moving from the plaintiff's road, the cost of movement of such tonnage cannot be ascertained. In the light of this averment or admission, the defendant's further averment that no profits were derived from the Carleton extension becomes vain and meaningless. On what basis can it be averred that there were no profits when, at the same time, it is averred that the very means essential to determine whether there were profits, are lacking?

In this situation the rigor of the requirement of proof should not be imposed upon the plaintiff. It would be irrational and inconsistent to lay upon the plaintiff a requirement that could not be complied with because of the defendant's insufficient records. By the same token it would be equally irrational to permit the defendant to profit from that situation.

The defendant obtained the control of the plaintiff's property and used it for a long time without warrant of law or right of contract. Where a person appropriates or improperly employs for his own use the property of another, he may be dealt with as a trustee for such other. A constructive trust is imposed by equity as a means of effecting an equitable adjustment. 26 Ruling Case Law, p. 1232; *Newman v. Newman,*

60 W. Va. 371, 55 S. E. 377. "A constructive trust is one not created by any words, either expressly or impliedly evincing a direct intention to create a trust, but only by the construction and operation of equity in order to satisfy the demands of justice." Hogg's Eq. Principles, p. 738. We are impressed that the facts of the instant situation require the application of the constructive trust doctrine. The defendant must be deemed a trustee of the plaintiff's property. The defendant admits that the gross revenue from the plaintiff's property was about $60,000.00. The plaintiff asks for no more than $45,000.00 thereof. In this particular the allegation of the bill is that "the defendant has continuously possessed and used the said Pierce Extension and exercised all of the acts of ownership thereover, and has derived from the use of said Extension large revenues, to-wit; revenues in excess of $45,-000.00, the exact amount being to this plaintiff unknown"; and the prayer, that "said Defendant may be required by proper decree in this cause to account for and pay over to this Plaintiff all such sums of money as it has received, aggregating at least the sum of $45,000.00, for the use of the said Pierce Extension and as remuneration for the haulage of freight originating thereon; that Defendant be required to answer this Bill under oath and show the exact number of tons of freight shipped by it over said Pierce Extension," etc.

If there has been created a situation wherein accuracy is impossible, the defendant and not the plaintiff is responsible, therefor. The reason that there cannot be an accounting by the defendant (according to its own answer) of the income and expenses of the Carleton Extension is because those accounts have been blended with accounts from other properties in the control of the defendant. There is a familiar principle of law and equity variously expressed, that all doubts shall be resolved against him who confuses another's property with his own. Where a person willfully and with fraudulent or other improper purpose intermingles the goods of another person with his own, so that their respective goods are indistinguishable, the wrongdoer forfeits his interest in the mixture to the other party. 12 Corpus Juris 491. "Substantially, a like method is adopted with the same result in settling the accounts of negligent and faithless trustees who have kept no

accounts, or have mixed indiscriminately the trust funds with their own. Equity does not fear wrong to the culpable trustee, but so shapes its decrees that no possible wrong shall come to the innocent cestui que trust." *Stone v. Marshall Oil Co.*, (Pa.) 57 Atl. 183, 187. "As long as trust property can be traced and followed, the property into which it has been converted remains subject to the trust; and, if a man mixes trust funds with his, the whole will be treated as trust property, except so far as he may be able to distinguish what is his. This doctrine applies in every case of a trust relation, and as well to moneys deposited in bank, and to the debt thereby created, as to every other description of property." *National Bank v. Insurance Co.*, 104 U. S. 54, 26 L. Ed. 693.

Eminent text writers are unequivocal in the statement of the principle here invoked. Thus in Perry on Trusts (7th Ed.), Vol. 1, sec. 447: "The trustee must not mingle the trust fund with his own, (nor with funds of a third person.) If he does (mingle the trust fund with his own,) the *cestui que trust* may follow the trust property, and claim every part of the blended property which the trustee cannot identify as his own." And in the English authority, Lewin on Trusts (13th Ed.), page 277, the following: "The trustee, wherever the trust property may be placed, must always be careful not to amalgamate it with his own, for, if he do, the *cestui que trust* will be held entitled to every portion of the blended property which the trustee cannot prove to be his own."

Considering the pleaded facts in the light of these principles, we are of opinion that the able trial chancellor properly required the defendant to make reparation, and that there was no error in entering against the defendant a decretal judgment based on the allegations of the bill and the admissions of the answer.

We affirm the decree.

*Affirmed.*