ANNA B. PETERSEN v. EDWARD SWAN AND OTHERS.[1]

April 2, 1953.

No. 35,898.

[1]Reported in 57 N. W. (2d) 842.

*Kelly & LaFevere,* for appellant.
*John W. Simpson,* for respondent.

KNUTSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

Marion and Edward Swan were married in 1935 and lived together until the death of Marion on July 26, 1950. During their married life both parties were steadily employed. From 1946 to 1950 their earnings were substantially the same. Marion handled the joint earnings of the couple from the beginning of their life

together. Edward would endorse his pay check and leave it with Marion. She allowed him five dollars per week for his own needs, out of which he usually took the couple out to dinner once each week. He did earn some small amounts on the side by loaning money to others. It does not clearly appear where he obtained the capital for this enterprise. What he earned from such activities he kept. Household expenses were paid by Marion out of the joint earnings.

Plaintiff, who is Marion's widowed mother, came to live with the Swans in 1939 and remained with them until 1946. She had her own room and was charged nothing for board or room. She did some of the housework. She received old age assistance, which she used as she saw fit, but occasionally she did purchase some things for the house and paid for some food out of her own funds.

In 1937 the Swans purchased a home. Originally they made a down payment of $300. The final payment was made in 1942 out of bonds which they had purchased out of their joint savings. After the house was paid for, the couple talked of saving their money so that they could eventually buy an apartment building and retire. Marion continued to handle the money. Edward trusted her implicitly and never checked up to see what she was doing with the money. Up until 1946 Marion purchased United States bonds with their joint savings, in which Edward was named either as joint owner or beneficiary. Commencing in 1946, unbeknown to either plaintiff or Edward, Marion purchased United States savings bonds having a maturity value of $4,750, registered in her name but payable on her death to plaintiff. Of these, bonds having a maturity value of $1,000 are dated 1946, $1,750 dated 1947, $1,000 dated 1948, and $1,000 dated 1949. During this same period of time Marion's earnings were $2,929.65 in 1946, $3,323.83 in 1947, $4,769.72 in 1948, and $2,671.25 in 1949. Checks were drawn on the joint account, representing at least a part of the living expenses of the couple, in the following amounts as shown by the record: $1,198.61 in 1947, $2,422.93 in 1948, and $2,361.09 in 1949. The record does not show what amounts were drawn for the year 1946 nor does it show

whether the above represents all living expenses and other expenses of the couple which were paid out of their joint earnings.

Upon the death of Marion the above bonds, in which plaintiff is named as beneficiary, were first discovered. Up to that time neither plaintiff nor Edward had any knowledge that plaintiff was named as beneficiary in the bonds.

During their coverture, bonds having a maturity value of $10,900 were purchased by Marion in which Edward was either joint owner or beneficiary.

Upon discovering that she was named as beneficiary in some of the bonds, plaintiff commenced this action in replevin, the bonds being in the possession of defendant Edward Swan. Defendant Swan answered, alleging that the joint earnings of himself and his deceased wife were commingled under an agreement that the joint earnings of the couple should be used for the purchase of an apartment building and that the bonds were in fact purchased with his funds. He sought to have a constructive trust impressed upon the bonds so purchased. After both parties had rested, the court granted plaintiff's motion for a directed verdict. The trial court was of the opinion that the evidence was insufficient to establish any fraud. In a memorandum attached to its order denying defendant's motion for judgment notwithstanding the verdict or a new trial, the court seems to have proceeded on the theory that, inasmuch as defendant's earnings during the years 1946 to 1950 were insufficient to purchase the bonds which he did receive and also provide the living expenses for the couple, which the court concluded were the sole responsibility of defendant, there could have been no conversion of his funds. The court also concluded that the evidence was insufficient to establish any wrongdoing, misrepresentation, or fraud on the part of Marion which would justify the imposition of a trust.

■ The rule in this state is well established that, where a wrongdoer uses money of another in the purchase of property in the name of a third person, the owner of the money is entitled to follow it into the property and enforce a constructive trust or equitable lien

upon the property purchased. Cisewski v. Cisewski, 129 Minn. 284, 152 N. W. 642; Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225; 3 Scott, Trusts, § 514.1.

■ While fraud may give rise to the establishment of a constructive trust, it is not always essential that fraud be shown before such trust may be impressed upon property acquired with the funds of another. In Knox v. Knox, 222 Minn. 477, 481, 25 N. W. (2d) 225, 228, in considering the nature and essentials of a constructive trust, we said:

"* * * It is an unjust-enrichment, rectifying remedy and has nothing in common with an express trust except a confusing similarity in surname or label. In order to arise, fraud, in its true sense, need not even be present. Certain courts and text writers have added to the confusion by using the word 'fraud' in such an unjustifiably broad and ambiguous manner as to include all conduct which equity treats as unfair, unconscionable, and unjust. 3 Bogert, Trusts and Trustees, Part 1 (1946 ed.) § 471. It should be noted that it is not even necessary that a fiduciary relation should exist. 25 Minn. L. Rev. 667, 689. It is not the product of the intent of the parties. The nature of a constructive trust can best be comprehended by keeping clearly in mind that it is not, in its true sense, a trust at all, but purely a creation of equity designed to provide a remedy for the prevention of unjust enrichment where a person holding property is under a duty to convey it to another to whom it justly belongs. 23 Minn. L. Rev. 706, 708; 54 Am. Jur., Trusts, §§ 218, 219; 1 Perry, Trusts and Trustees (7 ed.) §§ 166."

■ In its memorandum attached to its order denying defendant's alternative motion for judgment or a new trial, the court seems to have abandoned the theory that defendant had failed to prove fraud. Instead, the court concluded that Edward earned $13,711.25 and Marion $13,694.45 during the years 1946 to 1949; that the living expenses during 1947 to 1949 amounted to $5,982.63, as shown by the record, all of which is chargeable to defendant; that, after deducting such living expenses from defendant's earnings,

it conclusively appears that defendant received more in the way of bonds than such balance would have purchased; and that, consequently, the bonds in which plaintiff was named as beneficiary could not have been purchased with defendant's money. The court also concluded that the evidence was insufficient to establish an agreement between Edward and Marion that their money would be commingled and invested to their mutual advantage.

Defendant, at the outset, was confronted with M. S. A. 595.04, and as a consequence he was not permitted to testify to any conversation with his deceased wife. Aside from the testimony of defendant, however, two disinterested witnesses testified to conversations they had had with defendant and his wife, or had heard, in which the Swans stated that they were saving their money for the purpose of buying an apartment building. The record also discloses that they did go out and look at apartment buildings.

In determining whether the alleged agreement existed, the manner in which the Swans handled their funds cannot be overlooked. In considering the sufficiency of the evidence to establish the agreement between defendant and his wife, the court and jury are not limited to testimony of the disinterested persons but may also take into consideration such circumstantial evidence as tends to establish the claim, including the conduct of the parties themselves. We believe that the evidence was sufficient to present a question of fact as to the existence of an agreement as claimed by defendant.

■ The court was in error in ascribing to defendant, under the circumstances in this case, the sole responsibility for payment of household and living expenses out of the joint account. It is generally true, as between husband and wife, that the duty to support the family rests on the husband (Ackeret v. City of Minneapolis, 129 Minn. 190, 151 N. W. 976, L. R. A. 1915D, 1111), but, where the wife uses her own money, or permits her husband to do so, to pay household expenses under circumstances which disclose that she did not intend to be repaid, she has no claim upon her husband for such expenditures. McNally v. Weld, 30 Minn. 209, 14 N. W. 895; In re Schmidt's Estate, 56 Minn. 256, 57 N. W. 453;

Kosanke v. Kosanke, 137 Minn. 115, 162 N. W. 1060; Spalding v. Spalding, 361 Ill. 387, 198 N. E. 136, 101 A. L. R. 433; Annotation, 101 A. L. R. 442; 26 Am. Jur., Husband and Wife, § 342. Where, as here, the wife commingled her funds with those of her husband and paid the household expenses out of the common fund without any attempt to segregate her earnings from those of her husband, it must be presumed, in the absence of a showing to the contrary, that she intended to contribute her share toward the household expenses. It must be kept in mind that the wife had exclusive control over the joint fund and paid household expenses, at least partly, by drawing checks on the joint account.

■ Moreover, the evidence does not justify a conclusion that the bonds in which Edward and Marion Swan were joint owners, or in which Edward was named as a beneficiary, exceeded the net earnings of Edward. The record fails to show whether such bonds were purchased before or after 1946. Up to that time, when bonds were purchased in which plaintiff was co-owner or named as beneficiary, there was no conversion of the joint fund. Property purchased out of the joint earnings of the parties up to that time, including the home and its furnishings, became the property of defendant and his wife jointly. The fact that he had acquired an interest in property purchased out of their joint earnings, would not justify a conversion of his funds by his wife subsequently. The rights of defendant to the property here involved must be determined by what was done at the time of the alleged conversion and not by balancing the property acquired by defendant prior to such conversion with what he would have had had there been no commingling of funds.

■ The final and most difficult question is: On whom does the burden rest of proving ownership of the funds used in purchasing the bonds involved? The general rule is that, where there is a wrongful commingling of trust funds with personal funds of the trustee, the entire mass will be treated as trust funds except insofar as the trustee is able to distinguish what is his. 54 Am. Jur., Trusts, § 256; 3 Scott, Trusts, § 516; Carleton Min. & Power Co. v. West

Virginia N. R. Co. 113 W. Va. 20, 166 S. E. 536, certiorari denied, 289 U. S. 734, 53 S. Ct. 594, 77 L. ed. 1482.

This principle has been applied to a wrongful use of partnership assets. Engstrom v. Larson, 77 N. D. 541, 44 N. W. (2d) 97.

Where goods are wrongfully commingled every reasonable doubt should be resolved against the wrongdoer. Somers v. Kane, 168 Minn. 420, 210 N. W. 287.

In this case there is no claim, nor can there be any, that the funds of the two parties were wrongfully commingled. Defendant's whole case rests on the opposite theory that they were rightfully commingled. However, we believe that the same rule should apply where funds or property are rightfully commingled and in the possession of one of the joint owners and thereafter part of the property of one co-owner is wrongfully converted. In such case the burden should rest upon the wrongdoer, and those claiming under her, to show what part of the property belonged to her, and if it is impossible to make an equitable division, the whole of the converted property should be held to be that of the one who has done no wrong.

Here, Marion Swan had complete control of the joint account. Defendant trusted her implicitly. It was her duty to keep the books and records if she wished to segregate her funds from those of her husband. In Wilson v. Moline, 229 Minn. 164, 170, 38 N. W. (2d) 201, 205, we cite and follow Restatement, Trusts, § 172, in a case involving a partnership. With respect to the burden of proof, we there said:

"* * * The burden of proof is on defendant, as trustee, to show that he is entitled to the credits he claims for the feed sold by his personal feed business to the partnership. His failure to keep accounts and vouchers should work to his disadvantage and, ultimately, in failure to establish the credits he claims, and not to the disadvantage of the claimant, who did not keep the books and had no access to them.

"The burden of producing evidence at trial should have shifted to defendant, once it was shown that Moline's control over the account books was exclusive, that he did not maintain current or

even approximately accurate records, and that he had an interest adverse to the partnership, shown by self-dealing."

We are of the opinion that the evidence in this case is sufficient to justify a finding on the part of the court or jury that an agreement existed between Edward and Marion Swan that they would pool their joint earnings for the purpose of eventually purchasing an apartment house to be jointly owned. Assuming that the court did find such agreement from the evidence, the court could also find that commencing in 1946 Marion Swan, unbeknown to her husband and without his consent, used some of the joint funds for the purpose of purchasing bonds in which her mother, plaintiff here, was named as beneficiary, contrary to the intention of the parties. Assuming that such facts are found, the burden then rests upon plaintiff to show that the bonds which she now claims were in fact purchased with funds belonging to Marion Swan as distinguished from those belonging to her husband, and in the absence of such proof the bonds would belong to Edward Swan. There must be a new trial.

Reversed and new trial granted.