LAWRENCE THOMPSON v. KENNETH NESHEIM, SPECIAL
ADMINISTRATOR OF ESTATE OF
DORA THOMPSON, AND OTHERS.

159 N. W. (2d) 910.

June 14, 1968—No. 40,846.

408

*Christian, Slen & Savelkoul,* for appellants.
*Frundt & Hibbs,* for respondent.

NELSON, JUSTICE.

Defendants appeal from the judgment entered in favor of plaintiff in an action to impose a constructive trust on land in Iowa and on real and personal property in Minnesota.

Plaintiff, Lawrence Thompson, married Amelia J. Thoreson December 18, 1918. Four children were born of the marriage. Difficulties arose between the parties in 1936 and they were divorced in February 1938. In November 1939 plaintiff married Dora Boettcher, a divorcee with three children, defendants Irene Larson, Marianne Neuhalfen, and Willard Boettcher. This marriage lasted until the death of Dora July 13, 1963.

Plaintiff claims that prior to their marriage Lawrence and Dora agreed that they would share in the property accumulated after the marriage on a 50-50 basis. At the time of the marriage, Lawrence had assets of $2,250 and Dora had assets of about $5,250. Lawrence at that time operated a filling station and garage at Leland, Iowa, and continued its operation for a year or two. The parties lived on an 11-acre tract for the first year or so and then bought Lawrence's father's farm, purchasing his sister's interest therein.

Lawrence's first wife brought an action in 1942 for an increase in support payments. Dora had taken title to all the property purchased prior to this time in her own name to protect herself from any claims Lawrence's former wife might make against him. Lawrence and Dora purchased a farm at Buffalo Center, Iowa, late in 1942, again placing the title in Dora's name to protect them from demands of Lawrence's first wife. For the same reason they also put the bank account in Dora's name when they moved to Buffalo Center and from that time on it appears they deposited all of their money in an account in Dora's name—

even the inheritance of $2,250 Lawrence received from a grandfather. Their automobile was also in Dora's name although she did not drive.

When they bought the Buffalo Center farm, the conveyance to Dora was subject to mortgages to the Federal Land Bank and the Land Bank Commissioner. The farm was paid for and the mortgages paid off from the money each put into the account, but primarily from profits from the sale of livestock and farm produce. The parties moved to the farm in the spring of 1943. Lawrence did most of the farm work on the Iowa farm, but Dora helped him until 1948 when she had an operation. She did little farm work after that time.

In 1954 Lawrence negotiated for the purchase of a farm near Frost, Minnesota, and after a discussion the title was placed in Dora's name. They moved to this farm in 1955 and opened a bank account in Dora's name. Lawrence did most of the work, hiring others to do some of it. Dora was too sick to help very much. They rented out the Iowa farm, Lawrence transacting most of the business although Dora did some and they made important decisions together. There was testimony that only Dora signed the lease.

Lawrence and Dora borrowed money from time to time. There was introduced in evidence 13 notes which were signed by Lawrence alone and 14 notes signed by both Lawrence and Dora, but Dora never borrowed any money on her own or put any such money in the bank account. It was either borrowed by Lawrence alone or by both. Dora did write a few checks on the account. A deposit box at the bank was obtained in both their names and both used the box at will.

Lawrence and Dora obtained only one chattel mortgage and that was signed by both of them. Lawrence used the bank account to buy cattle, hogs, farm machinery, or whatever he wanted, without consulting Dora. He deposited all proceeds from the sale of livestock or crops in the bank account and wrote hundreds of checks in payment of bills from 1943 on, signing his name, Dora's name with his initials under it, or merely her name. At trial Lawrence introduced hundreds of receipts and other items showing that he made purchases and carried on every kind of transaction pertaining to the business of farming in his own name.

Eddie Wright, who prepared the couple's tax returns for 1958 and

each year thereafter following the purchase of the Minnesota farm, testified that he was instructed to file joint returns. Thus, Lawrence and Dora both had the benefit of the depreciation taken. Social security was assigned to Lawrence and Dora acquiesced in this. Dora, according to the record, never claimed any income or paid any social security tax.

Dora did not tell Charles Peterson, their banker and tax consultant from 1944 to 1958, that she owned the bank account. They filed joint returns and at no time did she claim any of the income or pay any social security. Mr. Peterson testified that Lawrence appeared to be the "boss" in the operation of the farm. Mr. Peterson looked to Lawrence for payment of all notes given for money borrowed although the bank account was in Dora's name.

In 1961 it was learned that Dora had cancer and she was quite sickly until her death. After she was hospitalized, Lawrence spent large sums of money for her care and visited her as often as possible. While he did not know what was in Dora's will, he did discuss it with her before it was drawn and advised her as to what he thought it should contain in view of their arrangement. Contrary to his expectation the will gave him only a life estate in 50 percent of her property, with no remainder interest for his children. The estate included the Iowa and Minnesota farms, farm machinery, cash in the bank, household goods, an automobile, and other miscellaneous property.

It appears that after Lawrence and Dora were married Lawrence signed a promissory note for $175 at 7-percent interest payable to Dora. He gave her this, he said, "so we could have the record straight" in case "something should have happened to me." One witness said that Dora had told the witness the Iowa farm was "hers." There was also testimony that Dora, while seated in the back seat of a car in 1951, said "everything was in her name so the first wife couldn't cause any trouble"; that one Sunday evening in 1952 or 1953, Dora said it was in her name to keep it away from Lawrence's first wife and children; that the bank account was in Dora's name so the first wife "couldn't collect alimony"; and that it was "a fifty-fifty deal." In their depositions defendants Irene Larson and Willard Boettcher admitted knowledge of an agreement between Lawrence and Dora. Lawrence said that after the custody hearing in-

volving his first wife and children in 1942, "That seemed to be the end of it pretty much, except once in a while you would hear from him [his first wife's attorney]. But that is really the turning point." It is his claim, however, that the parties by agreement continued to place their property in Dora's name but that each owned half of it.

After trial to the court without a jury, the court found as a fact that at the time of the marriage Dora contributed to the joint resources of the marriage approximately $5,000, and that plaintiff contributed not more than $2,250; that in the years subsequent to the marriage the parties acquired the farms in Iowa and Minnesota hereinbefore described, farm machinery, household goods, an automobile, and cash in the bank, and that the title to all of the property was held in the name of Dora Thompson for the purpose of discouraging plaintiff's first wife from making demands for additional support.

It found that this real estate and personal property was acquired and managed by and through the joint efforts of plaintiff and Dora and that the day-to-day management of their business affairs was conducted mainly by plaintiff. It also found that Dora's will purported to dispose of the real estate and personal property of the parties as though it were her sole property.

The trial court determined in its conclusions of law that Dora held title to one-half of said real estate and personal property in a constructive trust for, the benefit of Lawrence, thus entitling Lawrence to be declared the owner of an undivided one-half of all the property.

The legal issues before us appear to be as follows: (1) Was the evidence as a whole sufficient to permit the trial judge to impose a constructive trust for the benefit of plaintiff on one-half of all the real and personal property to which his wife, Dora, held legal title? (2) Did the trial court have jurisdiction to determine ownership and interest in the Buffalo Center farm located in Iowa and to impose a constructive trust on that land?

It is plaintiff's contention that under the circumstances shown by the record herein the court was justified in imposing a constructive trust on this property in order to avoid unjust enrichment of Dora Thompson. He contends that the fiduciary relationship between Dora and him-

self and the complete confidence plaintiff reposed in his wife to do the right thing created a duty on the part of Dora at least to reveal the terms of her will to her husband. Plaintiff thought he knew what was in the will. Evidently he thought she had left him at least one-half of the property acquired by their joint efforts. She failed to make her will in accordance with the concept he had of their agreement.

It is therefore plaintiff's claim that Dora obtained the legal title to this property by taking advantage of the confidential and fiduciary relationship of the parties in their joint adventure and efforts during the period of their married life. He contends that equity does not permit Dora to retain the full interest in the property but must and will impress a constructive trust upon it in favor of plaintiff for at least one-half of the property.

Defendants contend that there is no clear and satisfactory evidence in the record to justify the imposition of a constructive trust in favor of plaintiff. They concede that Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225, cited by the trial court in a memorandum accompanying its findings of fact, conclusions of law, and order for judgment "states the law in this state governing the imposition of constructive trusts." Their only quarrel with the Knox case, they say, is with its application to the case at bar. They contend that the trial court failed to recognize basic and fundamental factual differences between Knox and the present lawsuit.

In Knox the husband was the owner of a mortgage. Upon default in the mortgage he instituted foreclosure proceedings and subsequently the sheriff's certificate of sale was issued in his name as purchaser; shortly before the redemption period was to expire and in order to save certain rental income if moratorium proceedings should be instituted, the husband assigned his certificate of sale to his wife without consideration, and, according to the findings of the trial court, with the understanding of both husband and wife that the husband should remain the owner of the certificate and all rights thereunder and that the wife should subsequently reassign the certificate to him or convey to him any interest she acquired by virtue of it. She orally promised to reconvey the property to him but then refused to do so.

Following a divorce in the Knox case, this court ultimately sustained the trial court's determination that the wife was a constructive trustee holding title for the use and benefit of her husband. Defendants take the position that there are no similar facts in the case at bar and no agreement to reconvey as in the Knox case. They point out that there is no proof whatsoever of any agreement between Lawrence and Dora with respect to a promise by Dora to convey to Lawrence, either by deed during her lifetime, or by will after her death.

In the Knox case we concluded that the wife "expressly repudiated her oral promise to reconvey" (222 Minn. 489, 25 N. W. [2d] 232) and that the imposition of a constructive trust was proper in order to prevent the wife from being unjustly enriched by breaching her own agreement. However, for the constructive trust to arise there need be no agreement to reconvey. A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment. See, Bogert, Trusts and Trustees (2 ed.) § 471; Restatement, Restitution, § 160.

It is, of course, a well-established doctrine that where one person misappropriates property of another and converts it into another species of property, the defrauded party can assert equitable rights in the traceable product, unless the rights of a bona fide purchaser without notice have intervened.[1]

---

[1] See, Scott, *The Right to Follow Money Wrongfully Mingled with Other Money,* 27 Harv. L. Rev. 125; 18 Minn. L. Rev. 366; American Ry. Exp. Co. v. Houle, 169 Minn. 209, 210 N. W. 889, 48 A. L. R. 1266; Annotation, 48 A. L. R. 1269. Where the misappropriated funds have been used in the purchase of real property, the defrauded party has the option of two equitable remedies: (1) He can enforce a constructive trust and recover a share of the acquired property itself, even though such property may be more valuable than the money used to obtain it; or (2) he can enforce an equitable lien on the property to the extent of the misappropriated funds. See, Scott, *supra;* Sieger v. Sieger, 162 Minn. 322, 202 N. W. 742, 42 A. L. R. 1; Restatement, Restitution, § 202; 4 Pomeroy, Equity Jurisprudence (5 ed.) § 1051; Humphreys v. Butler, 51 Ark. 351, 11 S. W. 479; E. C. Bowman & Son Co. v. Hern, 239 Mass. 200, 131 N. E. 334. Contra, Appeal of Cross and Gault, 97

It appears that at times the courts have failed to distinguish clearly between equitable liens and constructive trusts and speak of the latter remedy when in effect, they are applying the former one. Our court, however, has pointed out the principle of the constructive trust device "has its basis in the right of property." See, Jennings and Shapiro, *The Minnesota Law of Constructive Trusts,* 25 Minn. L. Rev. 667, 676.

■ In Knox v. Knox, 222 Minn. 477, 25 N. W. (2d) 225, 226, this court laid down the general rule:

"Where, in reliance upon the confidential relation of marriage, property is conveyed without consideration by the husband to his wife, subject to a promise that she will subsequently reconvey the property to him, equity, in order to prevent unjust enrichment, will decree the wife to be a constructive trustee holding the property for the use and benefit of the husband where she repudiates her oral promise to reconvey."

The court also held in the Knox case that Minn. St. 501.01 and 501.07 are not applicable to constructive trusts, saying that if we bear in mind the true nature of a constructive trust, it is obvious that these statutory sections have no application and likewise obvious that § 501.08 has no application where no creditors are involved.

It was further explained in Knox that a constructive trust is not in its true sense a trust at all but merely a creation of equity designed to provide "an unjust-enrichment, rectifying remedy" (222 Minn. 481, 25 N. W. [2d] 228) where a person holding property is under a duty to convey it to another to whom it justly belongs; that fraud need not be present; and that a fiduciary relation need not exist. Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises. See, Restatement, Restitution, § 160, and *comment a* thereunder, which states:

"The term 'constructive trust' is not altogether a felicitous one. It might be thought to suggest the idea that it is a fiduciary relation similar to an express trust, whereas it is in fact something quite different from

Pa. 471; cf. Shearer v. Barnes, 118 Minn. 179, 136 N. W. 861. See, 23 Minn. L. Rev. 706.

an express trust. An express trust and a constructive trust are not divisions of the same fundamental concept. They are not species of the same genus. They are distinct concepts. A constructive trust does not, like an express trust, arise because of a manifestation of an intention to create it, but it is imposed as a remedy to prevent unjust enrichment. A constructive trust, unlike an express trust, is not a fiduciary relation, although the circumstances which give rise to a constructive trust may or may not involve a fiduciary relation."

In Petersen v. Swan, 239 Minn. 98, 57 N. W. (2d) 842, we held that where a wrongdoer uses money of another to purchase property in the name of a third party the owner of the money may follow it into the property and enforce a constructive trust or equitable lien upon the property purchased. In Petersen also the plaintiff husband was prevented from testifying to conversations with his deceased wife, but we made it clear that the circumstances concerning their dealings with each other may be taken into consideration, as well as the testimony of disinterested witnesses, in determining whether the evidence is sufficient to establish an agreement between them. In the Petersen case the husband and wife pooled their earnings and out of their joint savings purchased a home and other property in their joint names, but the wife who handled their money, purchased and registered bonds in her name, payable on her death to her mother.

The court held that the rule in this state is well established that where a wrongdoer uses money of another in the purchase of property in the name of a third person the owner of the money is entitled to follow it into the property and enforce a constructive trust or equitable lien upon the property purchased, citing Cisewski v. Cisewski, 129 Minn. 284, 152 N. W. 642; Knox v. Knox, *supra;* 3 Scott, Trusts, § 514.1. We also followed the Knox case in stating that while fraud may give rise to the establishment of a constructive trust, it is not always essential that fraud be shown before such trust may be impressed upon property acquired with the funds of another.

This court in Henderson v. Murray, 108 Minn. 76, 79, 121 N. W. 214, 216, 133 A. S. R. 412, 415, substantially adopted the same rule:

"\* \* \* [W]here a party obtains the legal title to land by fraud or bad faith, or by taking advantage of confidential or fiduciary relations, *or in any other unconscientious manner, so that he cannot justly retain the property,* equity will impress a constructive trust upon it in favor of the party who is equitably entitled to it." (Italics supplied.)

The trial court's findings that Lawrence and Dora each contributed such money as they had at the time of their marriage, that they placed title to the property in Dora's name to discourage demands for support from Lawrence's former wife, and that their property was acquired by their joint efforts are sustained by the evidence. They built up a real competence through the acquiring of farm lands, both in Iowa and Minnesota, and of the personal property necessary to successfully continue their farm operations during the period of their married life. While plaintiff could not testify to conversations with Dora, the circumstances of their dealings with each other may be taken into consideration, as well as the testimony of disinterested witnesses, in determining whether the evidence is sufficient to establish an agreement between them. Petersen v. Swan, *supra.* Bearing in mind that each of the parties had children by a prior marriage, for whom they would naturally wish to provide if their joint efforts after their marriage prospered, an agreement to share equally in the property acquired by their joint efforts seems reasonable and probable.

In the case at bar there is, and can be, no claim that the funds of the two parties, Lawrence and Dora, were wrongfully commingled. Plaintiff's case, it would seem, rests on the theory that the funds and the properties of Lawrence and Dora were rightfully commingled. However, as was said in the Petersen case (239 Minn. 105, 57 N. W. [2d] 847):

"\* \* \* [W]e believe that the same rule should apply where funds or property are rightfully commingled and in the possession of one of the joint owners and thereafter part of the property of one co-owner is wrongfully converted. In such case the burden should rest upon the wrongdoer, and those claiming under her, to show what part of the property belonged to her, and if it is impossible to make an equitable division,

the whole of the converted property should be held to be that of the one who has done no wrong."

No one in the instant case had complete control of the joint accounts or of the joint properties, although by agreement the title was in every instance placed in the name of Dora Thompson.

This court held in Hafner v. Hafner, 237 Minn. 424, 54 N. W. (2d) 854, that, as a general rule, in transactions between husband and wife there is a confidential relationship, good faith must be observed, and taking advantage of any lack of knowledge of rights is grounds for setting aside a transaction between them. In the case at bar the existence of the confidential and fiduciary relationship between Lawrence and Dora was precisely the reason for their failure to have an express agreement to convey. Strength of this relationship is shown by lack of the existence of such an agreement. It would seem contrary to the policy of the law which encourages such a confidential relationship between husband and wife to defeat a claim for a constructive trust which arose because the wife took advantage of that relationship to deprive her husband of his share of the property acquired by their joint efforts.

Defendants cite Tatge v. Tatge, 34 Minn. 272, 25 N. W. 596, 26 N. W. 121, for the proposition that when a person conveys property to another with full knowledge of the legal consequences of his act he must suffer those consequences. That case involved a transfer of real property by a son to his mother, subject to an agreement she would reconvey. The court held that there would be no constructive trust imposed because plaintiff had made the arrangement with full knowledge the mother could not reconvey without the signature of her husband who would not sign. In the instant case, Lawrence did not have full knowledge of the legal consequences of his action. He trusted that his wife would leave him his share of their property, which the trial court found to be one-half. In the present case there was no reason why Dora could not carry out their arrangement, as there was in the Tatge case.

In the Tatge case plaintiff, fearing he might be sued by a girl with whom he had been intimate, and desiring to place the property beyond the reach of any judgment she might obtain against him, conveyed the

premises to his mother with the understanding she would reconvey the same when the trouble with the girl had been settled. Subsequently, a settlement was effected and plaintiff then sought the reconveyance which the parents refused. Upon appeal this court held that no fraud appeared and that no constructive trust for the use and benefit of plaintiff could be decreed. The son was then of full age and had been emancipated. It was not urged upon the court that any confidential relationship existed or that any unjust enrichment would result by the refusal to reconvey. The original conveyance had been made in part as a gratuitous advancement and in part in consideration of a promise of support. The parents therefore in refusing to reconvey merely retained that which had previously been theirs and for which they apparently had received nothing. In the absence of a showing of unjust enrichment, none is to be presumed. Because of their obvious differences, it is clear that the Tatge case is not controlling here.

Defendants advance as the necessary ingredients of a constructive trust a breach of an agreement, a violation of a confidential relationship, and unjust enrichment. As we see it, all three are present in the case at bar. The record shows that there was an agreement that Lawrence and Dora were to share their property on a 50-50 basis. Dora, by attempting to dispose of all the property acquired, breached this agreement. The husband-wife relationship between Lawrence and Dora, and Lawrence's complete trust in and devotion to his wife, established a fiduciary relationship which was violated by Dora's attempt to dispose of all the jointly acquired property by will and her failure to disclose to Lawrence what she provided therein. If permitted to stand, the result is unjust enrichment of those to whom Dora willed the property.

In Georgopolis v. George, 237 Minn. 176, 54 N. W. (2d) 137, cited and relied upon by defendants, the court held that there must be clear and satisfactory evidence to justify an imposition of a constructive trust. An examination of that case reveals none of the required elements was established. We believe that the evidence in this case was sufficiently clear and satisfactory to establish the agreement as claimed by plaintiff, the violation by Dora of a fiduciary relationship, and unjust enrichment.

Defendants have pointed out that Dora originally contributed more

than plaintiff to the parties' joint resources. But, as the trial court pointed out in a memorandum accompanying its findings, the original contribution of the parties was insignificant in comparison with the value of the property they eventually acquired. Plaintiff contends only that he should have received the ownership of 50 percent of their joint property, and the court so determined.

■ Defendants contend that the trial court did not have jurisdiction to determine the ownership and interest in the Buffalo Center farm because the land was outside of the State of Minnesota and of the jurisdiction of the court. In Pavelka v. Pavelka, 116 Minn. 75, 133 N. W. 176, this court held that the fact that the real estate or part of it is situated beyond the jurisdiction of the court does not prevent it from acting in personam and commanding, with reference thereto, its own citizens, over whom it has jurisdiction, whenever it is necessary to enable the court to do justice between the parties before it. The court held that it may, in such case, compel a conveyance of real estate situate in another state.[2]

In State ex rel. Barrett v. District Court, 94 Minn. 370, 102 N. W. 869, 3 Ann. Cas. 725, it was held that an action for the cancellation of a contract for the sale of land which did not involve relief affecting any real estate record, was a transitory action and need not be brought where the land is situated. In that case we cited with approval Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555, holding that a suit to set aside a deed and obtain specific performance of a contract is transitory, and Massie v. Watts, 10 U. S. (6 Cranch) 148, 160, 3 L. ed. 181, 186, holding that in cases of fraud, trust, or contract, jurisdiction of a court is sustainable wherever the defendant may be found, although lands not within the jurisdiction of the court may be affected by its decree.

Defendants cite as controlling McAndrews v. Krause, 245 Minn. 85, 71 N. W. (2d) 153, 53 A. L. R. (2d) 312, contending that it establishes that a Minnesota court cannot order a foreign representative to convey property located outside of Minnesota. In the McAndrews case the suit was dismissed for lack of jurisdiction over defendants as representatives of the domiciliary estate of a nonresident decedent.

---

[2] Also see the dissenting opinion of Mr. Justice Peterson in Zochrison v. Redemption Gold Corp. 200 Minn. 383, 404, 274 N. W. 537, 546.

In the instant case defendant Willard Boettcher, the administrator of the Iowa estate, is not a party as administrator, but is only as an individual heir. The defendants are the administrator of the domiciliary estate, Mrs. Thompson's domicile having been Minnesota, and the heirs named in her will. The trial court's findings do not affect the foreign administrator, as he is not a party and therefore he is not "subject to more than one master." The title to the real estate in Iowa passed upon the death of Dora to her heirs and it is against those heirs and the personal representative in Minnesota, who holds title to personal property, that a constructive trust is imposed.

Certainly the court herein obtained jurisdiction over the administrator of the domiciliary estate, Mr. Kenneth Nesheim, and over Willard Boettcher, and Mrs. Thompson's two daughters. Hence, all of the necessary parties were actually subject to the court's jurisdiction and, having appeared to defend in the instant case, submitted to the court's jurisdiction. Although one daughter, Mrs. Neuhalfen, is a resident of a foreign state, she still appeared in the case. It would thus appear that the court had jurisdiction to determine whether plaintiff had any rights with respect to the Iowa land, and the determination is binding on the parties. They can therefore be required to convey a one-half interest in the land in Iowa to plaintiff.

Our duty as a reviewing court is fully performed when we have fairly considered all of the evidence and from it have determined that it reasonably supports the findings. Upon an appeal involving the determination of a question of fact by the trial court, it is not the duty of the appellate court to review and discuss the evidence for the purpose of demonstrating the correctness of the decision by the trial court. The rule by which we are governed is the well-established one that, where there is any evidence reasonably tending to sustain the findings of the trial court, such findings must be sustained.

After carefully considering the evidence, we reach the conclusion that the findings made are supported by evidence reasonably tending to establish the facts found. Therefore, under the evidence produced and the applicable law, it is clear that plaintiff is entitled to an affirmance. However, the case is remanded to the trial court for clarification by ordering

defendants to make conveyance to plaintiff of an undivided one-half interest in the Iowa and Minnesota farm lands and to assign and transfer to plaintiff one-half of all the personal property the title of which was in Dora's name at the time of her death, the purpose being to effect an equal division of all of said real and personal property between plaintiff and the heirs of Dora Thompson.

The trial court shall further direct that upon defendants' conveyance of an undivided one-half interest in all of the aforesaid property to plaintiff, he shall simultaneously therewith relinquish any and all claims to the remaining undivided one-half interest to be retained by defendants.

Affirmed and remanded.