*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0661**

In re the Estate of Clara Mae Murphy, Deceased.

**Filed January 9, 2017
Affirmed
Bjorkman, Judge**

Benton County District Court
File No. 05-PR-14-474

Paul A. Jeddeloh, Anthony J. Weigel, Jeddeloh and Snyder, P.A., St. Cloud, Minnesota (for appellant Victor Thelen)

Jacqueline M. Schuh, Colin K. Thomsen, Engelmeier & Umanah, P.A., St. Cloud, Minnesota (for respondent Jeffrey Murphy)

Considered and decided by Bjorkman, Presiding Judge; Connolly, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**BJORKMAN**, Judge

Appellant challenges the judgment in this probate action, arguing that he has a one-half ownership interest in the home titled in the name of his late girlfriend. Because the district court did not abuse its discretion in finding no unjust enrichment and declining to impose a constructive trust, we affirm.

## FACTS

Decedent Clara Murphy (Murphy) began dating appellant Victor Thelen in 1992. Shortly thereafter, they purchased a home together, taking title as joint tenants. After selling that home in 1995, they purchased the home at issue. As before, both Murphy and Thelen held title to the home, and both signed the six mortgages taken on the home over the subsequent years.

In 2002, Thelen signed a quitclaim deed conveying his interest in the home to Murphy. Contemporaneously, Murphy executed a will that appointed her son, respondent Jeffrey Murphy, as personal representative of her estate. The will does not specifically dispose of the home other than through a residuary clause. Murphy's three living children and Thelen are the residual beneficiaries. Thelen continued to live in the home after relinquishing his ownership interest.

Murphy died in January 2013. The following year, Jeffrey Murphy commenced this probate action, seeking to sell the home and distribute the assets of the estate in accordance with the 2002 will. Thelen filed an objection, claiming a one-half ownership interest in the home. During an evidentiary hearing, Thelen urged the district court to impose a constructive trust based on his intimate relationship with Murphy and the substantial contributions he made to the home, and asserted that the estate would be unjustly enriched if he did not receive a one-half interest. In response, Jeffrey Murphy pointed to the 2002 quitclaim deed, argued that mortgage payments Thelen subsequently made were rent payments, and asserted that Thelen benefited from the contributions he made to the property such that the estate was not unjustly enriched. The district court

2

concluded that Thelen had not presented clear and convincing evidence that unjust enrichment justified imposition of a constructive trust or that Thelen was entitled to other equitable relief. Thelen moved for a new trial or amended findings, which the district court denied. Thelen appeals.

## D E C I S I O N

A constructive trust is "purely a creation of equity designed to provide a remedy for the prevention of unjust enrichment where a person holding property is under a duty to convey it to another to whom it belongs." *Knox v. Knox*, 222 Minn. 477, 481, 25 N.W.2d 225, 228 (1946). Likewise, to obtain relief under the equitable theory of unjust enrichment, a claimant must not only demonstrate that "another party knowingly received something of value to which he was not entitled," but also that the "circumstances are such that it would be unjust for that person to retain the benefit." *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. App. 2001). A district court must find by clear and convincing evidence that a constructive trust is justified to prevent unjust enrichment. *In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn. 1983).

Because imposition of a constructive trust is an equitable remedy, we will only reverse if the district court clearly abuses its discretion. *Nadeau v. County of Ramsey*, 277 N.W.2d 520, 524 (Minn. 1979). A district court abuses its discretion if its findings are unsupported by the record or if it improperly applies the law. *City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011). We will disturb a district court's findings of fact only if they are clearly erroneous. *In re Estate of Torgersen*, 711 N.W.2d 545, 550 (Minn. App. 2006), *review denied* (Minn. June 20, 2006). Findings of fact are clearly

3

erroneous if they leave this court "with a definite and firm conviction that a mistake has been made." *In re Estate of Beecham*, 378 N.W.2d 800, 802 (Minn. 1985). We defer to the district court's credibility findings because that court "ha[s] the advantage of observing the witnesses and judging their credibility on a first hand basis." *Hollom v. Carey*, 343 N.W.2d 701, 704 (Minn. App. 1984).

## I.     The district court's findings of fact are not clearly erroneous.

Thelen argues that the evidence does not support the district court's findings, and that the significant financial and other contributions he made to increase the home's value contradict those findings. We address each challenged finding in turn.

First, Thelen contends the district court clearly erred by finding Thelen's financial contributions to be in the nature of rent payments and not indicative of co-ownership. Thelen notes the six jointly executed mortgages on the home, the fact he and Murphy jointly obtained and made a claim under a homeowners' insurance policy, and a work agreement the two signed to replace gutters and downspouts, as evidence of his ownership intent. And while acknowledging that Murphy issued certificates of rent paid so that he could receive rent-related tax refunds for the years 2008-2014, Thelen questions the lack of such certificates prior to 2008. We are not persuaded.

At the evidentiary hearing, the district court heard conflicting testimony regarding this documentary evidence and other indicia of Thelen's purported ownership interest in the home. Thelen admitted the signature on the 2002 quitclaim deed is his. But he does

4

not recall signing it and baldly alleged that he was tricked into doing so.[1]   Thelen presented evidence that he continued to pay the majority of the mortgage expenses after Murphy's death.   Jeffrey Murphy testified that he personally paid sewer, water, and homeowners' insurance costs after Murphy's death.   And Thelen continued to live in the home during all the months that he made the mortgage payments.   We are not left with a firm conviction that the district court was mistaken when it determined Thelen's mortgage payments were in the nature of rent.

Second, Thelen argues that his non-monetary contributions to the home support a finding of unjust enrichment.   He points to numerous repair and maintenance tasks he performed and described himself as Murphy's primary caretaker.   But Jeffrey Murphy testified that he and his siblings provided care for their mother and her home prior to her death and continued to maintain the home thereafter.   The district court found that though Thelen had made significant contributions to the property, he also received benefits in the form of an improved residence in which he has continued to live despite not being the owner of record.   As noted above, "the *claimant* must show that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."   *Schumacher*, 627 N.W.2d at 729 (emphasis added).   In evaluating whether Thelen met his burden, the district court made credibility determinations to which we must defer, and carefully

---

[1] The district court found, and the parties do not dispute, that Thelen's memory is "significantly impaired."   The court specifically noted Thelen could not remember his own dementia and cancer diagnoses or Murphy's illness.

considered the 2002 quitclaim deed and multiple certificates of rent paid, and other documentary evidence in rejecting Thelen's claims.

In sum, we discern no clear error by the district court in finding that Thelen and Murphy had a landlord/tenant relationship, that Thelen received benefits in the form of an improved home in which to live, and that the estate did not receive an illegal benefit because of Murphy's acts or those of her estate's representative. In the absence of unjust enrichment, equity does not support the imposition of a constructive trust. *Knox*, 222 Minn. at 481, 25 N.W.2d at 228.

## II. The district court properly applied the law.

Thelen argues that the district court misapplied the law regarding the impact of an intimate relationship on determining the existence of a landlord/tenant, rather than a co-owner, relationship. And he asserts that the district court committed legal error by failing to examine the reasons why Thelen and Murphy originally owned the home together.

Thelen cites no authority to support his argument that an intimate relationship between parties negates a finding of a landlord/tenant relationship. And our review of the law reveals no such support. Rather, the cases on which Thelen relies all turn on whether, as a matter of fact, the parties agreed to own property jointly. In *Eriksen*, a claimant sought to establish a one-half interest in a home she shared with the title-holding decedent. 337 N.W.2d at 672. But the decision affirming the probate court's allowance of the claim was not based on the intimate relationship between the parties; it was based on record evidence that the claimant and decedent agreed to jointly purchase the home. *Id.* at 674. Similarly, the dispositive issue in *Thompson v. Nesheim* was whether the

6

evidence demonstrated joint ownership of farm property titled in only wife's name. 280 Minn. 407, 417, 159 N.W.2d 910, 918 (1968). And *Wilcox v. Nelson* considered whether the defendant purchased the property out of which the plaintiff operated a boarding house as an investment or in trust on plaintiff's behalf. 227 Minn. 545, 549, 35 N.W.2d 741, 743 (1949). In sum, the cases Thelen cites were decided on their unique facts. None support his argument that the presence of an intimate relationship negates a landlord/tenant relationship.

Likewise, Thelen has not demonstrated that the district court's failure to determine why the home was originally titled in the names of both Murphy and Thelen undermines the court's decision. Thelen contends that the district court should have considered whether Thelen loaned money to Murphy in connection with the 1995 purchase. We disagree. Thelen asserts that a review of caselaw "involving constructive trusts shows that the district court necessarily considers why the subject property was titled as it was." But the cases he cites all focus on whether there was an agreement to jointly purchase the home. *Eriksen*, 337 N.W.2d at 674; *Thompson*, 280 Minn. at 417, 159 N.W.2d at 918; *Knox*, 222 Minn. at 480-81, 25 N.W.2d at 228; *In re Estate of Savich*, 671 N.W.2d 746, 752 (Minn. App. 2003). And none of these cases involve a subsequent conveyance like Thelen's 2002 quitclaim deed. Moreover, a district court considering a constructive-trust claim "is not bound by a formula, but is free to effect justice to avoid unjust enrichment according to the equities." *Freundschuh v. Freundschuh*, 559 N.W.2d 706, 711 (Minn. App. 1997), *review denied* (Minn. Apr. 24, 1997). Because no authority requires a district court to analyze how a home was originally titled to apply the equitable principles

of a constructive trust and because the addition of a strict requirement to do so does not comport with caselaw, we discern no abuse of discretion by the district court in failing to do so.

Because the district court made supported findings that Thelen did not have a one-half ownership interest in the house, and applied the appropriate legal standard, we conclude that the district court did not abuse its discretion in declining to grant equitable relief.

**Affirmed.**