**In re the ESTATE OF Bette Janiece SAVICH, Decedent.**

No. A03–414.

Court of Appeals of Minnesota.

Nov. 25, 2003.

---

Jerome S. Ophoven, Anderson & Ophoven, P.A., Grand Rapids, MN, for appellant Brad Lovdahl.

Richard R. Burns, Jacob J. Baker, Hanft Fride, Duluth, MN, for appellants Buddy John and Buddy Jason Savich and Gary Lotton.

Timothy Aldrich, Aldrich Law Office, Grand Rapids, MN, for respondents Hendricksons.

Considered and decided by KLAPHAKE, Presiding Judge, WILLIS, Judge, and ANDERSON, Judge.

## OPINION

KLAPHAKE, Judge.

Appellants Brad Lovdahl, personal representative of the estate of Bette Janiece Savich, and Buddy John Savich, Buddy Jason Savich, and Gary Lotton, devisees of the estate, challenge the district court's order (1) determining that quitclaim deeds signed after Savich's death were ineffective to transfer title; (2) refusing to reform these deeds; and (3) refusing to impose a constructive trust on land conveyed by Savich to respondents Bobbie Hendrickson, Philip Hendrickson, and Brian Hendrickson. Because real property may not be transferred to a decedent by deed signed after the death and because there was not clear and convincing evidence that would support reformation of the deeds, we affirm the district court on these issues. But because there is clear and convincing evidence here that Savich intended respondents to hold the land in trust for others, we conclude that the district court abused its discretion by refusing to impose a constructive trust. We therefore reverse and

remand for imposition of a constructive trust consistent with this decision.

## FACTS

Decedent Savich and her husband owned a farm of approximately 500 acres. Shortly after her husband's death in 1997, Savich decided to deed her farm acreage to her children, reserving a life estate, in order to protect the land if she had to enter a nursing home. Savich divided the land into parcels of various sizes, placed slips of paper with the descriptions of the parcels into a hat, and permitted her children, Brenda, Buddy Jason, Buddy John, Dana, and her nephew Gary Lotton to each pick a parcel. However, because Dana was in the midst of a divorce, Savich decided not to deed Dana any property. In May 1997, Savich deeded her farm acreage as follows:

| | | |
|---|---|---|
| 1. | Buddy John | 80 acres |
| 2. | Buddy Jason | 65 acres |
| 3. | Brenda | 80 acres |
| 4. | Gary Lotton | 120 acres |
| 5. | Bobbie Hendrickson | 80 acres |
| 6. | Brian & Phillip Hendrickson | 40 acres |

Bobbie, Brian, and Phillip Hendrickson are Brenda's children and Savich's grandchildren, and were minors at the time of the 1997 transfer. The parcel deeded to Bobbie was the same parcel that Dana had chosen from the hat. Appellants testified that Savich intended Bobbie to hold the 80 acres for Dana's benefit, until her divorce was final. Appellants testified that Brian and Phillip were to hold their 40 acres for the benefit of all of Savich's grandchildren. Savich did not memorialize these intentions in writing.

Respondents did not exercise any ownership rights over the land and Savich retained a life estate interest in the parcels. At trial, respondents testified that they worked on the family farm each summer throughout their childhoods and that they were the only grandchildren of Savich's to do so. Respondents testified that Savich had not told them that they were to hold the deeded land in trust for others; Bobbie testified that she did not even know about the 1997 conveyance until after Savich's death.

In July 2001, Savich was dying of cancer and entered hospice care. She decided that she wanted to keep the farm intact and, on the advice of her attorney, asked her family to quitclaim the property back to her, so that she could form a limited liability corporation (LLC), which she would then devise to them through her will. On July 2, 2001, appellants attended a meeting at Savich's home. During this meeting, they agreed to quitclaim the land back to Savich and to form an LLC. Brenda drew up the quitclaim deeds and these were signed on that date or shortly thereafter by Brenda, Buddy John, Buddy Jason, Lotton and their spouses. Respondents were not present at this meeting, but their mother, Brenda, agreed to draw up quitclaim deeds for them to sign and to obtain their signatures. Buddy John recorded this meeting; a transcript of the tape was made available to the court.

Savich signed the LLC documents on July 11, 2001. The quitclaim deeds from Brenda, Buddy John, Buddy Jason, and Lotton were filed on July 12; Savich signed her last will and testament on the same day. Savich left the LLC to Brenda, Buddy John, Buddy Jason, and Lotton, and stated that she intended to provide for Dana through the LLC buy-sell agreement. She left the rest and residue of her property to Brenda, Dana, Buddy John, Buddy Jason, and Lotton in equal shares. Savich died on July 24, 2001.

On August 1 and 2, 2001, Brenda gave respondents quitclaim deeds to sign. Respondents testified that they did not discuss these documents with their mother; she merely directed them to sign because

the attorneys needed the documents. Respondents testified that they were not aware of the contents of the deeds and did not understand the effect of signing the documents.

During the probate process, Brenda became increasingly disenchanted with her siblings. On August 13, 2002, she filed an objection to the final accounting, which she withdrew on November 19, 2002. Respondents filed an objection to the final accounting on November 26, asserting that the quitclaim deeds that they had signed in August 2001 were defective because they did not know what they were signing and because Savich had died.

An evidentiary hearing was held on December 13, 2002. On February 27, 2003, the district court issued its order, concluding that the deeds signed by respondents were void because the grantee, Savich, was already dead, and because respondents did not know what they were signing and thus lacked the requisite intent to transfer land. Further, the district court refused to impose a constructive trust on this land or to reform the quitclaim deeds to reflect the estate of Savich as grantee, because of a lack of intent. Brad Lovdahl, as personal representative, and Buddy John, Buddy Jason, and Lotton, as devisees, appeal from the district court's decision.

## ISSUES

1. Did the district court err by determining that the posthumous quitclaim deeds were ineffective to transfer property?

2. Did the district court abuse its discretion by refusing to reform the quitclaim deeds?

3. Did the district court abuse its discretion by refusing to impose a constructive trust on the property deeded by decedent to respondents?

## ANALYSIS

### 1. Posthumous Deed

■ When reviewing mixed questions of law and fact, "we will correct erroneous applications of law, but accord the [district] court discretion in its ultimate conclusions and review such conclusions under an abuse of discretion standard." *Rehn v. Fischley*, 557 N.W.2d 328, 333 (Minn.1997). Findings of fact made by a district court will not be set aside unless clearly erroneous, with due deference given to the district court's opportunity to judge the credibility of witnesses. Minn. R. Civ. P. 52.01.

■ In order to transfer title, a deed must be delivered. *Slawik v. Loseth*, 207 Minn. 137, 139, 290 N.W. 228, 229 (1940). The essential elements of delivery are surrender of control by the grantor and intent to convey title. *Id.* Physical delivery is not necessary; the grantor must merely show a present, unconditional intention to part with ownership. *Mollico v. Mollico*, 628 N.W.2d 637, 641–42 (Minn.App.2001). A deed signed, but not delivered, before the death of the grantor is void. *Sauter v. Dollman*, 46 Minn. 504, 504–05, 49 N.W. 258, 258 (1891). Likewise, a deed cannot be delivered to a deceased grantee. "Thus, . . . a conveyance cannot be made to a deceased person. Not only would there be a failure to comply with historical requirements [of seisin], but it also would be impossible to make delivery to such a grantee." 14 Richard R. Powell, *Powell on Real Property* § 81A.04[1][a][iii] (Michael Allan Wolf ed., 2003).

It is undisputed here that respondents signed these quitclaim deeds only after Savich's death. The district court therefore did not err in concluding that the deeds were void and unenforceable.

### 2. Reformation of the Deed

■ Appellants argue that the district court erred by refusing to reform the

quitclaim deeds to reflect the grantee as the estate of Savich or the LLC. A court using its equitable powers may order the reformation of a deed if it is proved that

> (1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument allegedly evidencing the agreement failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party.

*Theros v. Phillips*, 256 N.W.2d 852, 857 (Minn.1977). The evidence supporting reformation must be "consistent, clear, unequivocal, and convincing." *Id.* The proponent of reformation must demonstrate not only that a mistake was made, but must also submit clear proof of the actual agreement between the parties. *Id.* at 858. On review, the district court's decision will be overturned only if it is manifestly contrary to the evidence. *Yliniemi v. Mausolf*, 371 N.W.2d 218, 222 (Minn.App.1985).

Here, there is no evidence that respondents intended, but mistakenly failed, to deed the property to the estate or to the LLC. Therefore, the district court's refusal to reform the deed was not an abuse of discretion.

### 3. Constructive Trust

■■■■ Appellants argue that the district court abused its discretion by failing to impose a constructive trust on the property in question. "A constructive trust is an equitable remedy imposed to prevent unjust enrichment and is completely dissimilar to an express or resulting trust." *Freundschuh v. Freundschuh*, 559 N.W.2d 706, 711 (Minn.App.1997), *review denied* (Minn. Apr. 24, 1997). When imposing a constructive trust, "the court is not bound by a formula, but is free to effect justice to avoid unjust enrichment according to the equities." *Id.* The court must be "persuaded by clear and convincing evidence that the imposition of a constructive trust is justified to prevent unjust enrichment." *In re Estate of Eriksen*, 337 N.W.2d 671, 674 (Minn.1983). A constructive trust is not limited to situations involving fraud or other wrongdoing, but may be imposed when there is clear and convincing evidence that it would be "morally wrong for the property holder to retain" the property. *Spiess v. Schumm*, 448 N.W.2d 106, 108 (Minn.App.1989).

A constructive trust has been imposed in cases where an ad hoc estate plan has gone awry, similar to the situation here. In *Spiess*, the decedent wanted to leave his assets to his stepchildren and step grandchildren, and he transferred most of his assets into a payable-on-death [POD] account, naming his executor, Schumm, as the payee. *Id.* at 107. This transfer was made shortly before Spiess' death. When a bank employee explained the legal significance of a POD account, Spiess stated, "Put [Schumm's] name on there, he will know what to do with it." *Id.* Because Schumm failed to distribute the assets after Spiess's death, the district court imposed a constructive trust on the account. *Id.* at 108. Despite the legality of Schumm's actions, this court affirmed the district court's imposition of the constructive trust, reasoning that it would be morally wrong to ignore clear and convincing evidence of Spiess' intent and Schumm's unjust enrichment. *Id.*

In *Borsgard v. Elverum*, 248 Minn. 405, 406, 80 N.W.2d 604, 606 (1957), decedent Elverum owned a farm in her own right, which she transferred to herself and her husband as joint tenants. She and her husband continued to treat that parcel of property as her own. *Id.* During her last illness, she made a will devising the farm

to her sisters and nieces; her husband was present and aware of the devises and acquiesced in them. *Id.* at 407, 80 N.W.2d at 606. On Elverum's death, her husband took title as the surviving joint tenant; on his death two years later, the farm passed to his relatives, who eventually sold the farm. *Id.* at 409, 80 N.W.2d at 607. The district court concluded that Elverum's devisees were entitled to equitable relief and imposed a constructive trust for their benefit, reasoning that Elverum's husband's failure to carry out her wishes established the basis for that relief. *Id.* at 413–14, 80 N.W.2d at 610.

Here, the evidence is clear and convincing that (1) Savich made the original transfer in 1997 to protect the property if she had to enter a nursing home; (2) she transferred the parcel of land intended for her daughter Dana to respondent Bobbie Hendrickson, because of Dana's impending divorce; (3) she told appellants that the land she transferred to respondents Brian and Philip Hendrickson was for all of her grandchildren; (4) she asked all of the recipients of land in 1997 to deed the property back to her at a family meeting shortly before her death; (5) although respondents were not present at this meeting, their mother assured Savich that she had prepared deeds for respondents and that she would have them signed and filed; (6) a tape recording of the meeting was contemporaneously made, memorializing these assurances, and was presented to the district court during the hearing; (7) Savich made her will in the belief that all of the property had been transferred back to her name and died shortly thereafter; (8) respondents initially deeded or attempted to deed the property back to Savich, although the transfer was not effective because of her death; and (9) respondents did not object to acceding to Savich's wishes until relations soured between their mother and Savich's other devisees. Given this clear and convincing evidence, we conclude that it would be unjust or morally wrong for respondents to continue to hold property that they had an equitable duty to convey to decedent.

### DECISION

We affirm the district court's decision, concluding that the posthumous deeds were ineffective to transfer real property and that appellant had failed to produce clear and convincing evidence supporting reformation of the deeds. Although imposition of a constructive trust is usually a matter for the district court in its equitable powers, we are persuaded here that the district court erred by considering only the intent of respondents, rather than equities of the situation. We therefore reverse the district court's order and remand for imposition of a constructive trust on the land held by respondents for the benefit of Savich's devisees.

**Affirmed in part, reversed in part, and remanded.**