# United States Bankruptcy Appellate Panel

## For the Eighth Circuit

_____

No. 15-6019

_____

In re: Sandra Jo Bruess, formerly known as Sandy B. Macho, formerly known as Sandra J. Rolloff

*Debtor*

------------------------------

Sandra Jo Bruess

*Debtor - Appellant*

v.

Michael S. Dietz

*Trustee - Appellee*

_____

Appeal from United States Bankruptcy Court
for the District of Minnesota - St. Paul

_____

Submitted: October 9, 2015
Filed: October 29, 2015

_____

Before SCHERMER, SALADINO and NAIL, Bankruptcy Judges.

_____

SALADINO, Bankruptcy Judge.

The Appellant, Sandra Jo Bruess, appeals from an order of the bankruptcy court[1] sustaining the bankruptcy trustee's objection to her claim of an exemption in certain real property and limiting the exemption to $155,675.00. We have jurisdiction over this appeal from entry of the bankruptcy court's final order pursuant to 28 U.S.C. § 158(b). For the reasons set forth below, we affirm.

*Factual Background*

This case arises out of the Chapter 7 bankruptcy proceeding filed by Ms. Bruess in the District of Minnesota on December 15, 2014. On Schedule C of her bankruptcy filing, Ms. Bruess claimed as exempt, pursuant to Minnesota law, her one-third interest in her homestead property located in Minnesota. Ms. Bruess acquired her interest in the property by quitclaim deed from her father and his wife dated April 5, 2010, which was filed for record in Brown County, Minnesota, on January 14, 2013.[2] The value of her claimed exemption was $562,760.33.

The bankruptcy trustee objected to the homestead exemption claim asserting that Ms. Bruess did not acquire her interest in the property until her father caused the quitclaim deed to be recorded on January 14, 2013, which was only 700 days prior to bankruptcy filing. As such, according to the trustee, Ms. Bruess acquired the property within the 1215-day window of 11 U.S.C. § 522(p)(1), thereby limiting her state law exemption to $155,675.00 in value. Ms. Bruess, on the other hand, argued that she acquired the property when the deed was executed on April 5, 2010, which

---

[1]The Honorable Gregory F. Kishel, Chief Judge, United States Bankruptcy Court for the District of Minnesota.

[2]Under the terms of the quitclaim deed, Donn Bruess (Ms. Bruess' father) and his wife, conveyed a life estate in the property to Donn Bruess and the remainder interest to Ms. Bruess and her brothers, Steven and William.

was substantially more than 1215 days prior to the bankruptcy filing. Therefore, her state law homestead exemption should not be limited pursuant to 11 U.S.C. 522(p)(1).

On March 31, 2015, the bankruptcy court held a hearing on the trustee's objection and Ms. Bruess' resistance. The parties submitted a Stipulation of Fact under which they agreed:

> 1. That the quit claim deed filed as document number 391317 of the Brown County, Minnesota Recorder was executed by the Debtor's father, Donn Bruess, and his wife, Audrey Bruess, on April 5, 2010.
> 2. Attorney Robert D. Hinnenthal of New Ulm, Minnesota, drafted said deed, and notarized it on the date that it was executed.
> 3. That the deed remained in the possession of Attorney Hinnenthal from April 5, 2010 to the date that it was recorded on January 14, 2013.
> 4. That on or about January 14, 2013, Donn Bruess directed Attorney Hinnenthal to record the deed.
> 5. That Donn Bruess died on April 21, 2013.
> 6. That Audrey Bruess died in October, 2013.

The trustee also submitted affidavits, along with a transcript of Ms. Bruess' testimony at her § 341 meeting. Ms. Bruess did not submit any evidence, and the parties submitted the matter to the bankruptcy court for consideration. The bankruptcy court issued its oral ruling on the record sustaining the trustee's objection. Specifically, the bankruptcy court found that, until he instructed his attorney to record it, "Donn Bruess retained complete control over the fate of that deed." Therefore, delivery (and transfer of interest) did not take place until January 14, 2013, when he directed his attorney to record it.

Ms. Bruess appealed, asserting that the bankruptcy court erred in determining that she did not acquire her interest in the property, and the deed from her father was

-3-

not "delivered" under Minnesota law, until her father instructed his attorney to record it.

## *Standard of Review*

We review the bankruptcy court's conclusions of law de novo and its findings of fact for clear error. *Addison v. Seaver (In re Seaver)*, 540 F.3d 805, 809 (8th Cir. 2008); *Doeling v. Nessa (In re Nessa)*, 426 B.R. 312, 314 (B.A.P. 8th Cir. 2010). The parties are in agreement that the resolution of this appeal turns on when the deed was delivered under Minnesota law, which is a question of fact. Under long-standing Minnesota case law:

> It is, of course, very elementary law that a deed does not take effect until there is a delivery to the grantee, . . . . Delivery is a question of fact, . . . . The important question in determining whether there has been a delivery is the intent of the grantor that the instrument shall pass out of his control, and operate as a conveyance.

*Babbitt v. Bennett*, 71 N.W. 22, 22-23 (Minn. 1897).

A factual finding is clearly erroneous if, after examining the entire record, we are left with a definite and firm conviction that the bankruptcy court has made a mistake. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. *Anderson*, 470 U.S. at 573. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. *Id.* at 574.

*Discussion*

Under 11 U.S.C. § 522, a debtor who files bankruptcy may exempt from property of the estate the property delineated in 11 U.S.C. § 522(d),[3] or may use the exemptions available under state law and other federal laws. 11 U.S.C. § 522(b)(1)-(3). Here, Ms. Bruess elected to use the exemptions available under state and federal law other than bankruptcy law.

One of the exemptions claimed by Ms. Bruess is the Minnesota homestead exemption as set forth in Minnesota Statutes §§ 510.01 and 510.02. "The homestead may include any quantity of land not exceeding 160 acres. The exemption per homestead, whether the exemption is claimed by one or more debtors, may not exceed $390,000 or, if the homestead is used primarily for agricultural purposes, $975,000 . . . ." Minnesota Statutes § 510.02. In Schedule C, Ms. Bruess claimed her entire interest in her homestead property, valued at $562,760.33, as exempt.

The trustee does not dispute Ms. Bruess' entitlement to a homestead exemption under Minnesota law. The trustee only argues that the limitation of 11 U.S.C. § 522(p) should apply. That section was added by the 2005 BAPCPA amendments to the Bankruptcy Code and provides a limitation on the dollar value of certain state law exemptions for recently acquired property. Specifically, for purposes of this appeal, that section limits a state law exemption in real property as follows:

> [A] debtor may not exempt any amount of interest that was acquired by the debtor during the 1215-day period preceding the date of the filing of the petition that exceeds in the aggregate $155,675 in value in —

---

[3]This choice among exemption schemes is not available for debtors living in states that have opted out of the right to use the Bankruptcy Code exemptions. 11 U.S.C. § 522(b)(2). Minnesota has not opted out.

> (A) real or personal property that the debtor or a
> dependent of the debtor uses as a residence[.]

11 U.S.C. § 522(p)(1)(A). The only issue in this appeal is whether Ms. Bruess "acquired" the property in which she claims her homestead exemption within the 1215-day period preceding the filing of the petition thus limiting her homestead exemption to $155,675.00.

In bankruptcy, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Minnesota law is well-settled that the transfer of an interest in real property does not occur until the delivery of the deed.

> Under Minnesota law, to transfer title to real property, a deed must be delivered to the intended recipient. *Slawik v. Loseth*, 207 Minn. 137, 290 N.W. 228, 229 (1940); *In re Estate of Savich*, 671 N.W.2d 746, 750 (Minn. Ct. App. 2003). A physical delivery of the deed is not necessary to convey title, all that is required is to show an unconditional intention by the grantor to part with ownership. *Barnard v. Thurston*, 86 Minn. 343, 90 N.W. 574, 576 (1902). In *Barnard*, the court stated "To constitute a complete delivery thereof, the grantor must deal with it in a way evincing an intention to part presently and unconditionally with all control over it, and that it shall take effect according to its terms." *Id.*
> The two essential elements to delivery of a deed are, (1) surrender of control by the grantor, and (2) an intent to convey the title. *Exsted v. Exsted*, 202 Minn. 521, 279 N.W. 554, 557 (1938). The delivery depends on the intent of the grantor "as appears from the contents of the deed and all the surrounding circumstances." *Vessey v. Dwyer*, 116 Minn. 245, 133 N.W. 613, 614 (1911).

*Georgen-Running v. Bidwell (In re Bidwell)*, 326 B.R. 759, 764-65 (Bankr. D. Minn. 2005) (footnote omitted).

Thus, the fact question for the bankruptcy court was whether Donn Bruess intended to surrender control of the deed with an intent to convey title when he signed it and left it with his attorney. As the party objecting to the homestead exemption, the trustee had the burden of proving that the exemption was not properly claimed. Fed. R. Bankr. P. 4003(c). The trustee's evidence included the Stipulation of Fact between the parties. Under the terms of that stipulation, the parties agreed that the deed was executed by Donn Bruess and his wife on April 5, 2010; that it was notarized by his attorney; that the deed remained in the attorney's possession from April 5, 2010, until it was recorded on January 14, 2013; and that on January 14, 2013, Donn Bruess directed his attorney to record the deed.

The trustee also presented affidavits from each of Ms. Bruess' two brothers, William and Steven. Steven's affidavit stated: "I was party to discussions with my father about various considerations that influenced how he intended to finalize his estate plan. There were several factors that he was weighing. These included my brother's severe illness and my sister's poor record regarding financial matters." The affidavit further stated: "My understanding is that my father did not make a final decision to pass title to his real estate to his children by deed until he instructed his lawyer to record the deed in January of 2013."[4] William's affidavit echoed those statements.

---

[4]It is not clear whether the attorney for Ms. Bruess objected to the use or admissibility of the affidavits, although the transcript indicates the bankruptcy judge found that a hearsay exception should apply and the affidavits were admissible. Ms. Bruess did not appeal that evidentiary ruling.

Finally, the trustee presented the transcript of the § 341 meeting of creditors at which Ms. Bruess testified on January 7, 2015. In part, that transcript reveals the following testimony by Ms. Bruess regarding the deed:

> Q: So it had been sitting with your dad's attorney –
> A: It had been sitting there –
> Q: – for a while –
> A: – for a while until dad made his decision to have it filed.
> Q: Okay.
> A: It was an issue because dad held off on things for quite some time my brother was very ill with cancer and he just wasn't sure how he was going to handle the estate. So –
> Q: Okay.
> A: – then he gave the go ahead, he wanted it filed, and that's what happened. So . . . .
> Q: Okay. Fair enough. Dad just – so I understand your version of it, dad had the Deed prepared –
> A: Yes.
> Q: – and then his attorneys held it because he was concerned about William's –
> A: Uh-huh.
> Q: – health issues –
> A: Uh-huh.
> Q: – and then at some point he was satisfied that he wanted to move forward and then he had [attorney] file the Deed?
> A: Yes.
> Q: Thank you. Okay. And did you ever have the Deed? Did he give it to you and you held it?
> A: Never.
> Q: All right. When did he tell you about it?
> A: Oh, I don't know.
> Q: Did you find out about it before it was recorded?
> A: He had said he was going to make the decision to record it, yeah, but – no.
> Q: Okay. When did he tell you he was going to make the decision to record it?

-8-

A: I don't even know when it was recorded.
Q: It was recorded January 14th of 2013. So roughly a year ago, I guess.
A: Yeah.
Q: Before then, did he tell you?
A: Shortly. Yeah.
Q: Okay.

In summary, the trustee presented evidence from three sources, including Ms. Bruess herself, to the effect that instead of recording the deed immediately after execution, Donn Bruess left it with his attorney until he determined whether to go forward with that conveyance. As Ms. Bruess said, prior to contacting his attorney in January 2015 to instruct him to record the deed, "he just wasn't sure how he was going to handle the estate." Notably, Ms. Bruess did not present any evidence at the hearing. Upon consideration of the trustee's evidence, the bankruptcy court found that Donn Bruess had not surrendered control of the deed with the intent to irrevocably convey the property.

Ms. Bruess argues on appeal that even in the absence of an effective escrow agreement, delivery of a deed to a third party *can* be sufficient to pass title under Minnesota law. While that statement may be true in and of itself, it does not affect the outcome of this appeal. As the attorney for Ms. Bruess even acknowledged in her appellate brief, "the crucial question is the grantor's intent, which is a question of fact." At oral argument, the attorney for Ms. Bruess suggested that another possible interpretation of the evidence is that Donn Bruess intended to convey a remainder interest to his children at the time he executed the deed and delivered it to his attorney, as evidenced by the fact that he ultimately told the attorney to record it. Even if that were a plausible interpretation of the evidence, a fact finder's choice between two permissible views of the evidence cannot be clearly erroneous. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).

The only evidence presented at the hearing overwhelmingly supports the bankruptcy judge's finding of fact that Donn Bruess did not intend to convey the property until he instructed his attorney to record the deed. There being no evidence to the contrary, the bankruptcy court's fact findings were not clearly erroneous. Therefore, we affirm.

## *Conclusion*

For the reasons stated above, we affirm.

_____